**The PEOPLE of the State of Colorado,**
**Plaintiff–Appellee,**

v.

**Juan G. LOYAS, Defendant–Appellant.**

**No. 07CA1782.**

Colorado Court of Appeals,
Div. I.

Oct. 14, 2010.

John W. Suthers, Attorney General, Joseph G. Michaels, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee.

Douglas K. Wilson, Colorado State Public Defender, Ellen K. Eggleston, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant.

Opinion by Judge BERNARD.

Defendant, Juan G. Loyas, appeals his judgment of conviction of second degree burglary of a dwelling, unlawful sexual contact, first degree trespass of a dwelling, and two counts of third degree assault. He also appeals his conviction and sentence as a habitual criminal. We affirm.

## I. Background

The victim testified that defendant kicked open the back door of her home and then attacked her as she tried to escape through the front door. Defendant chased the victim into a parking lot while she yelled for help, then threw her to the ground, beat her, and began tearing off her underwear. He continued to hold her down, choking her and touching her breasts and vagina, until a passing vehicle stopped and the driver yelled at him to get off of her.

The driver testified that she saw defendant on top of the victim, who was screaming for help. She drove into the parking lot, honking the horn and yelling at defendant. Several other passersby also intervened when they heard the victim's cries for help, and some of them testified at trial.

E.H. testified that he attempted to follow defendant from the scene to give his location to the police. Defendant struck E.H. with a can of spray paint defendant had been huffing immediately before he broke into the victim's home. E.H. and two other men were able to hold defendant until the police arrived.

## II. Analysis

### A. The Jury Instruction Was Proper

■ Defendant correctly observes that the second degree burglary charge originally alleged that he had entered the victim's home with the intent to commit sexual assault. The trial court, at the prosecution's request and over defendant's objection, instructed the jury that the offense underlying the burglary charge was unlawful sexual contact, not sexual assault. Defendant contends that this change to the burglary charge constituted a constructive amendment that violated Crim. P. 7(e). We disagree.

■ An information must describe the charges against an accused sufficiently to allow him or her to prepare an adequate defense and to prevent further prosecution for the same offense. *People v. Rodriguez*, 914 P.2d 230, 256–57 (Colo.1996)(citing *Cervantes v. People*, 715 P.2d 783, 785 (Colo. 1986)). A defendant cannot be required to defend against a charge that is not contained in the charging document. *Rodriguez*, 914 P.2d at 257. "Thus, when a defendant is charged with one crime and the jury is instructed on the elements of another, a resulting conviction cannot stand." *People v. Valdez*, 946 P.2d 491, 497 (Colo.App.1997), *rev'd on other grounds*, 966 P.2d 587 (Colo.1998); *see also People v. Jefferson*, 934 P.2d 870, 872 (Colo.App.1996).

■ Crim. P. 7(e) provides:

The court may permit an information to be amended as to form or substance at any time prior to trial; the court may permit it to be amended as to form at any time before the verdict or finding if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced.

However,

an uncharged offense may be submitted to the jury over the defendant's objection if either (1) the uncharged offense is a lesser included offense of the charged offense, or (2) the offense as charged gives fair notice

to the defendant that he may be required to defend against the uncharged offense. *People v. Garcia,* 940 P.2d 357, 358–59 (Colo. 1997). Thus, an information "need not specify lesser included offenses which may have been committed in commission of the described acts." *People in Interest of R.G.,* 630 P.2d 89, 91 (Colo.App.1981) (citing *People v. Hopper,* 69 Colo. 124, 169 P. 152 (1917)).

The question whether one crime is a lesser included offense of another is an issue of law that we review de novo. *Armintrout v. People,* 864 P.2d 576, 579 (Colo.1993). For the reasons explained below, we conclude that, under the circumstances here, unlawful sexual contact is a lesser included offense of sexual assault. Therefore, the trial court's decision to submit to the jury a burglary charge based on the underlying offense of unlawful sexual contact instead of the underlying offense of sexual assault did not violate Crim. P. 7(e).

■ To determine whether one offense is a lesser included offense of another, we apply the "strict elements test" of *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). *People v. Leske,* 957 P.2d 1030, 1036–37 (Colo.1998). Under that test,

[i]f proof of facts establishing the statutory elements of the greater offense necessarily establishes all the elements of the lesser offense, the lesser offense is an included offense. However, if each offense necessarily requires proof of at least one additional fact that the other does not, the strict elements test is not satisfied.

*People v. Bass,* 155 P.3d 547, 553 (Colo.App. 2006) (citations omitted).

■ One offense may also be a lesser included of another, even though it does not satisfy the strict elements test, when it "differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person ... suffices to establish its commission." § 18–1–408(5)(c), C.R.S. 20; *see also People v. Raymer,* 662 P.2d 1066, 1069–70 (Colo.1983). Section 18–1–408(5)(c) "is limited to situations in which the 'included offense' is less serious or carries a lesser degree of culpability." *People v. Halstead,* 881 P.2d 401, 406 (Colo.App.1994).

The crime of sexual assault requires that the actor knowingly inflict sexual intrusion or sexual penetration on a victim, section 18–3–402(1), C.R.S.2010, and that such act be accompanied by one or more of the factors contained in section 18–3–402(1)(a)–(h), C.R.S.2010.

"Sexual intrusion" is defined in section 18–3–401(5), C.R.S.2010, to mean

any intrusion, however slight, by any object or any part of a person's body, except the mouth, tongue, or penis, into the genital or anal opening of another person's body if that sexual intrusion can reasonably be construed as being for the purposes of sexual arousal, gratification, or abuse.

As pertinent here, "sexual penetration" is defined in section 18–3–401(6), C.R.S.2010, to mean "sexual intercourse, cunnilingus, fellatio, analingus, or anal intercourse.... Any penetration, however slight, is sufficient to complete the crime."

Defendant was also originally charged with, and subsequently convicted of, a count of unlawful sexual contact. This crime requires that the actor knowingly subject a victim to any sexual contact, and that such an act be accompanied by one or more of the factors contained in section 18–3–404(1)(a)–(g).

"Sexual contact" is defined in section 18–3–401(4), C.R.S.2010, to mean

the knowing touching of the victim's intimate parts by the actor, or of the actor's intimate parts by the victim, or the knowing touching of the clothing covering the immediate area of the victim's or actor's intimate parts if that sexual contact is for the purposes of sexual arousal, gratification, or abuse.

"Intimate parts" is defined in section 18–3–401(2), C.R.S.2010, to mean "the external genitalia or the perineum or the anus or the buttocks or the pubes or the breast of any person."

We recognize that proof of sexual penetration does not also require proof that the actor's purpose was for sexual arousal, gratification, or abuse. As a result, proof that an

actor knowingly inflicted sexual penetration on a victim against his or her will, would not necessarily establish all elements of unlawful sexual contact.

However, proof of sexual intrusion requires proof of contact with a person's intimate parts for such a sexual purpose. Accordingly, proof that an actor knowingly inflicted sexual intrusion on a victim against his or her will, as required to prove sexual assault, necessarily establishes all elements of unlawful sexual contact when, as here, the defendant assaults the victim. Thus, employing the *Blockburger* test, proof that a defendant knowingly inserted his fingers into a victim's vagina—which would be sexual intrusion—would also be sufficient to prove that he had knowingly touched her intimate parts—which would be sexual contact. *See Bass,* 155 P.3d at 553. Here, although there is conflicting evidence whether defendant's fingers penetrated the victim's vagina, the victim's testimony clearly established that defendant at least touched the exterior of her genitalia.

Further, employing the test contained in section 18–1–408(5)(c), we conclude that unlawful sexual contact involves less serious injury or risk of injury than sexual intrusion. *See Raymer,* 662 P.2d at 1069–70. It also carries a lesser degree of culpability than sexual assault. *See Halstead,* 881 P.2d at 406. Subject to exceptions, sexual assault is a class four felony, section 18–3–402(3), C.R.S.2010, and unlawful sexual contact is a class one misdemeanor, section 18–3–404(2)(a), C.R.S.2010. Based on the existence of certain factors, unlawful sexual contact becomes a class four felony, but, with the exception of two factors not pertinent here, the existence of the same factors elevates sexual assault to a class three felony. *Compare* § 18–3–404(2)(b), C.R.S.2010 (unlawful sexual contact), *with* § 18–3–402(4), C.R.S.2010 (sexual assault). We therefore conclude that unlawful sexual contact is a lesser included offense of sexual assault when the greater offense is predicated on sexual intrusion.

An information charging sexual assault is therefore sufficient to advise an accused that he or she could be required to defend against the lesser included offense of unlawful sexual contact. Likewise, the information here provided fair notice to defendant that he could be required to defend against a burglary charge predicated on the lesser sexual offense.

Nor did defendant suffer unfair surprise or prejudice due to the variation between the information and the jury instruction. Defendant was also charged with the crime of unlawful sexual contact, so he was aware that he would be required to defend against that charge. Further, defendant did not contend at trial that he was innocent of burglary because his intent on entering the victim's home was to commit unlawful sexual contact rather than sexual assault. Rather, he testified that he went to the victim's home to confront a man he believed lived there, that he did not expect to see the victim there when he kicked open the door, and that if he touched her breasts or vaginal area it was accidental. This theory of defense applied equally whether the burglary charge was predicated on either underlying sexual offense.

Defendant further contends that the instruction impermissibly lowered the prosecution's burden of proof because it changed the element of intent required to support the burglary charge. Specifically, he argues that the offense as charged required the prosecution to prove he intended to inflict sexual penetration or intrusion on the victim, *see* § 18–3–402, C.R.S.2010, while the jury instruction required proof of intent to subject the victim to any sexual contact, not necessarily including actual penetration or intrusion, *see* § 18–3–404(1)(a).

The statute defining second degree burglary requires intent to commit "a crime against another person or property." The exact nature of the predicate offense is not material to the burglary conviction. *Accord People v. Richardson,* 58 P.3d 1039, 1044–45 (Colo. App.2002) (failure to specify offense underlying a burglary charge was a defect in form not warranting reversal where information adequately advised defendant of charges; information need not allege every element that must be proved at trial); *cf. Litwinsky v.*

*Zavaras*, 132 F.Supp.2d 1316, 1319 (D.Colo. 2001)(where defendant commits assault during burglary, thereby elevating offense from second to first degree burglary, elements of first degree burglary under § 18–4–202(1), C.R.S.2010, necessarily include elements of assault). Thus, as discussed above, the proper inquiry in evaluating a variance between a jury instruction and the corresponding burglary charge in an information is whether the charging document provided adequate notice. We therefore reject defendant's contention.

Accordingly, we discern no error in the trial court's instructions to the jury.

### B. Additional SVP Findings Are Not Required

■ Defendant claims the trial court made inadequate findings to support its conclusion that he is a sexually violent predator (SVP). We are not persuaded.

■ We review de novo the question whether the trial "court's findings are sufficient to support a legal conclusion that the defendant is a sexually violent predator." *People v. Buerge*, 240 P.3d 363, 369 (Colo. App.2009). However, because defendant failed to object to the lack of specific findings at sentencing, we review only for plain error. *Id.* Plain error is obvious and substantial error that so undermines the fundamental fairness of the proceeding that it casts serious doubt on the reliability of the verdict. *Id.; see also Harris v. People*, 888 P.2d 259, 267 (Colo.1995); *People v. O'Connell*, 134 P.3d 460, 464 (Colo.App.2005).

Section 18–3–414.5(2), C.R.S.2010, requires the trial court to "make specific findings of fact," based on the results of a sexually violent predator risk assessment completed by the probation department, and enter an order concerning whether the defendant is a sexually violent predator. *See Buerge*, 240 P.3d at 369; *see also People v. Rowland*, 207 P.3d 890, 895 (Colo.App.2009) (sexually violent predator statute requires court to use results of risk assessment to make SVP findings).

As relevant here, a sexually violent predator is an offender:

· who was over the age of eighteen on the date of the offense;

· who has been convicted of unlawful sexual contact;

· whose victim was a stranger;

· who, based on the results of the SVP risk assessment, is likely to commit another sexual offense against a stranger or a person with whom the offender promoted a relationship primarily for the purpose of sexual victimization.

*See* § 18–3–414.5(1), C.R.S.2010.

Here, it is undisputed that defendant was over eighteen when he committed the current offense of unlawful sexual contact and that the victim was a stranger to him. The trial court found at the sentencing hearing that defendant's prior felony convictions included criminal attempt to commit sexual assault and that defendant was "somebody who cannot be managed in the community and [was] a threat to all who live in this community." The court also stated that there was "no question with this violation of what would have happened if those citizens— of what further horror would have happened to [the victim] if those citizens hadn't intervened." The court further found, "based on the assessment by the probation department," that defendant is a sexually violent predator.

The risk assessment completed by the probation department determined that defendant was at high risk to reoffend based on his prior felony convictions, his documented history of violent behavior and substance abuse, and the fact that he had committed more than one sexual offense. The risk assessment was performed according to established guidelines, and its factual basis is supported by the record, including the presentence investigation report, which reveals prior felony convictions for second degree assault on a police officer, two counts of attempted sexual assault, and first degree criminal trespass with a violent crime sentence enhancer. Defendant was also previously convicted of misdemeanor assault and had been arrested at least seventeen times for abuse of toxic vapors since his eighteenth birthday.

■ It is important for a trial court to identify and make specific findings of fact concerning each of the four criteria enumerated in section 18–3–414.5 in making its SVP determination. *See People v. Tuffo,* 209 P.3d 1226, 1231–32 (Colo.App.2009)(trial court's determination that the defendant was a sexually violent predator was reversed, in part, because the trial court did not make specific findings of fact). However, in this case, our review of the record reveals that the trial court considered and addressed each issue. *See Buerge,* 240 P.3d at 369.

The determination ultimately turned on whether defendant was likely to reoffend. In addition to referencing the risk assessment, the trial court found that defendant was a threat to the community and that the present sexual offense would likely have been even more serious had others not intervened to stop it.

We therefore conclude that no reversible error occurred. *See Tuffo,* 209 P.3d at 1232 ("More general findings might suffice, or the lack of specific findings might be harmless under Crim. P. 52(a), if the evidence supporting an SVP conclusion were ample.").

## C. Sufficient Evidence Supported the Habitual Criminal Convictions

■ Defendant argues that there was insufficient evidence to support the trial court's findings that he had been previously convicted of several felonies for the purposes of sentencing him as a habitual criminal. We do not agree.

■ When reviewing a claim of insufficient evidence, we will uphold a conviction if the verdict is supported by substantial evidence, viewed in the light most favorable to the prosecution. *Mata–Medina v. People,* 71 P.3d 973, 983 (Colo.2003); *see also People v. McIntier,* 134 P.3d 467, 471 (Colo.App.2005) (evidence is sufficient when "any rational trier of fact might accept the evidence, taken as a whole and in the light most favorable to the prosecution, as sufficient to support a finding of guilt beyond a reasonable doubt")(citing *People v. Sprouse,* 983 P.2d 771, 777 (Colo. 1999); *Kogan v. People,* 756 P.2d 945, 950 (Colo.1988)).

### 1. Proof of Identity

Defendant first contends that the evidence was insufficient to establish his identity as the perpetrator of the three prior offenses because his name is listed variously as John G. Loya, John Gabriel Loya, and Juan Gabriel Loya. We disagree.

■ "In habitual criminal proceedings, the prosecutor has the burden to prove beyond a reasonable doubt that the accused is the person named in the prior conviction." *People v. Strock,* 252 P.3d 1148, 1156 (Colo.App.2010)(citing *People v. Moore,* 226 P.3d 1076, 1088 (Colo.App.2009)). Expert testimony linking fingerprint evidence from prior felony cases to the defendant is a valid means of proving his or her identity as the perpetrator of the earlier crimes. *People v. Carrasco,* 85 P.3d 580, 583 (Colo.App.2003).

Here, the trial court heard testimony of a police fingerprint technician who compared the known fingerprints of defendant to fingerprints taken in each of the three prior cases and determined that they belonged to the same person. The trial court also had the opportunity to review photographs of defendant taken at the time he was arrested for each prior offense. As observed by the trial court, a defendant can employ different names, as did defendant in this case—although his appellate briefs refer to him as "Juan Loyas," his trial counsel told the trial court defendant's last name was "Loya. There's no 's' in there."

We therefore conclude that the evidence was sufficient to support the trial court's finding that defendant was the person who committed the prior felonies.

### 2. Discrepancy in Date of Conviction

We likewise reject defendant's contention that his habitual criminal conviction should be vacated because the date of conviction alleged for one of his prior offenses was different from the date proved by the evidence.

■ For purposes of habitual criminal proceedings, a conviction is effective as of the date the judgment of conviction is entered by

the trial court. *People v. Harris*, 914 P.2d 434, 440–41 (Colo.App.1995). The fact that the trial judge may not have signed the mittimus until several days after the entry of judgment of conviction is immaterial. *Id.* Likewise, a

> variance between the specific date of the offense as alleged and the date as proven at trial is not fatal, absent a showing that the defendant was impaired in his defense to the charge at trial or in his ability to plead the judgment as a bar to a subsequent proceeding.

*People v. Young*, 923 P.2d 145, 148 (Colo. App.1995).

Here, the information alleged that defendant was convicted of attempted sexual assault on November 5, 1984. The corresponding mittimus shows that defendant appeared in court on that date, but the judgment of conviction was dated November 8, 1984, and signed by the judge on November 9, 1984.

Defendant has failed to show that he was prejudiced by this discrepancy. We therefore conclude that reversal is not warranted.

### D. Habitual Criminal Counts Need Not Be Submitted to a Jury

■ Defendant urges us to vacate his habitual criminal convictions on the ground that the habitual criminal act, § 18–1.3–801, et seq., C.R.S.2010, is "likely" unconstitutional because it allows a judge, rather than a jury, to find facts that increase a defendant's sentence beyond that authorized by the jury's verdict. We do not agree.

■ *"Other than the fact of a prior conviction,* any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000)(emphasis added). The Colorado Supreme Court reaffirmed the prior conviction exception in *Lopez v. People*, 113 P.3d 713, 723 (2005). Its holding is therefore dispositive. *See also Moore*, 226 P.3d at 1089–90 (a defendant is not entitled to have a jury make habitual criminal findings; recognizing the ongoing vitality of the prior conviction exception);

*People v. Nunn*, 148 P.3d 222, 224–28 (Colo. App.2006)(same; collecting cases).

### E. The Sentences Are Appropriate

Defendant submits that his sentences are constitutionally disproportionate. We are not persuaded.

■ Whether a sentence is constitutionally proportionate is a question of law that we review de novo. *People v. Reese*, 155 P.3d 477, 479 (Colo.App.2006).

■ The Eighth Amendment requires, very generally, that the sentence "fit" the crime; it forbids only "grossly disproportionate" sentences. *People v. Deroulet*, 48 P.3d 520, 523–24 (Colo.2002). In conducting a proportionality review, we first compare the gravity of the offense to the severity of the punishment; only when this comparison gives rise to an inference of gross disproportionality do we engage in an extended proportionality review. *Id.* "[O]nly an abbreviated review is necessary when the crimes supporting a habitual criminal sentence include grave or serious offenses and when the defendant will become eligible for parole, albeit not for forty years." *People v. Gaskins*, 825 P.2d 30, 36 (Colo.1992). Moreover, "no remand is necessary in cases where an extended proportionality review is unnecessary; in such cases an appellate court may conduct an abbreviated proportionality review." *Deroulet*, 48 P.3d at 524.

■ When conducting an abbreviated proportionality review under the habitual criminal statute, we "must consider the gravity or seriousness of the underlying crimes *together* with the triggering crime" to determine whether in combination they are so lacking in gravity or seriousness as to suggest that the sentence is grossly disproportionate. *Deroulet*, 48 P.3d at 525 n. 6; *see also People v. Mershon*, 874 P.2d 1025, 1031 (Colo.1994); *Gaskins*, 825 P.2d at 36.

Here, the trial court sentenced defendant to forty-eight years in the Department of Corrections for the burglary conviction and twenty-four years to life for the unlawful sexual contact conviction, to be served consecutively. For proportionality review pur-

poses, we consider each consecutive sentence separately. *See Deroulet,* 48 P.3d at 524; *see also Close v. People,* 48 P.3d 528, 538–40 (Colo.2002).

### 1. Burglary

Defendant concedes that second degree burglary is a "grave or serious" crime for purposes of proportionality review. *See Deroulet,* 48 P.3d at 524 (citing *Gaskins,* 825 P.2d at 37); *People v. McNally,* 143 P.3d 1062, 1064 (Colo.App.2005). Thus, because defendant is not facing a life sentence on that count, only an abbreviated proportionality review is required. *See also Strock,* 252 P.3d at 1158 (for crimes determined to be grave and serious per se, court conducting proportionality review need consider only harshness of penalty).

Defendant's underlying felony convictions include first degree assault on a police officer, attempted sexual assault, and first degree criminal trespass with a violent crime sentence enhancer. All of these are violent crimes that present an extraordinary risk of harm to society. *See* § 18–1.3–406(2)(a)(I)(E), C.R.S.2010 (a sexual offense is a violent crime); § 18–1.3–401(10)(b)(XII), C.R.S.2010 (crimes of violence present an extraordinary risk of harm); *People v. Moore,* 251 P.3d 451, 456 (Colo.App.2010) (first degree assault is a per se crime of violence and extraordinary risk of harm offense). We conclude that, taken in combination, these offenses and the triggering offense of second degree burglary are far from being "so lacking in gravity or seriousness" as to suggest that defendant's sentence of forty-eight years, with the possibility of parole, is excessively harsh.

### 2. Unlawful Sexual Contact

To determine whether a crime is "grave or serious," we consider the harm caused or threatened to the victim and the culpability of the offender. *Solem v. Helm,* 463 U.S. 277, 292, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983); *Close v. People,* 48 P.3d 528, 542 (Colo.2002).

Under any circumstances, unlawful sexual contact is an extraordinary risk crime. *See* § 18–3–404(2)(a). Here, defendant beat and choked the victim and forcibly groped her breasts and genitals. He ignored her screams and stopped only when several passersby came to the victim's aid. Defendant's actions in breaking into the victim's home and chasing her clearly indicate his intent and determination to force unwanted sexual contact. These facts, when considered pursuant to *Solem* and *Close,* lead us to conclude that defendant's crime was grave and serious for the purpose of conducting an abbreviated proportionality review. Accordingly, because defendant's sentence offers the possibility of parole, an abbreviated proportionality review is appropriate. *See Gaskins,* 825 P.2d at 36.

We next consider the harshness of defendant's sentence in comparison to his crimes. Although an indeterminate sentence of twenty-four years to life is substantial, we conclude that, under these facts, the combination of defendant's history of violent felonies and the triggering offense of unlawful sexual contact is not "so lacking in gravity or seriousness" as to render that penalty constitutionally disproportionate.

The judgment and sentences are affirmed.

Judge TAUBMAN and Judge CASEBOLT concur.