2012 COA 68

**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Jeffrey Dewayne GREEN, Defendant–Appellant.**

No. 08CA2439.

Colorado Court of Appeals, Div. II.

April 26, 2012.

As Modified on Denial of Rehearing June 7, 2012.

John W. Suthers, Attorney General, Majid Yazdi, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Rebecca R. Freyre, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge J. JONES.

¶ 1 Defendant, Jeffrey Dewayne Green, appeals the judgment of conviction entered on a jury verdict finding him guilty of first degree criminal trespass, his sentence on that conviction, and his adjudication and sentencing as a habitual criminal. We affirm.

## I. Background

¶ 2 Defendant travelled from Colorado Springs to Denver to visit the victim, with whom he was in an intimate relationship. The victim's friend D.H. had been staying at the victim's house for the previous three nights.

¶ 3 After spending several hours at the victim's house, defendant and D.H. accompanied the victim to the restaurant where she worked. While there, defendant and the victim had a physical altercation, after which the victim told defendant "to leave [her] alone and never talk to [her] again." One of the victim's friends brought defendant's belongings from the victim's house to the restaurant, and defendant left the restaurant. Later, D.H. also left the restaurant and went to the victim's house.

¶ 4 When the victim finished working, she picked up D.H. from her house, and drove him to his girlfriend's house. She returned home around 3:45 a.m. After she undressed, defendant emerged from her living room and approached her, asking to talk to her. She told him to get out of her house, and called 9–1–1. After defendant left, the victim discovered that the window screen in her son's bedroom had been broken.

¶ 5 The People charged defendant with second degree burglary, first degree criminal trespass, third degree assault, unlawful sexual contact, criminal mischief, harassment, and three habitual criminal counts. The People later added a criminal impersonation count, to which defendant pled guilty before trial.

¶ 6 A jury found defendant guilty of first degree criminal trespass, but acquitted him of the other charges. After several hearings, the district court adjudicated defendant a habitual criminal, and sentenced him to twelve years in the custody of the Department of Corrections for the trespass conviction, plus two years mandatory parole; and six years in prison for the criminal impersonation conviction, to be served concurrently with the twelve-year sentence.

## II. Discussion

¶ 7 On appeal, defendant contends that the district court erred by (1) twice refusing to give a jury instruction saying that a person who has possessory rights in or occupies a premises may authorize another person to enter; (2) violating his constitutional and statutory speedy trial rights during post-trial proceedings; (3) denying his motion for a jury trial on the habitual criminal charges; and (4) declining to conduct an extended proportionality review of his sentence. We address and reject each contention in turn.

## A. Possessory Rights Instruction

### 1. Background

¶ 8 The court instructed the jury on the elements of first degree trespass as follows:

The elements of the crime of First Degree Criminal Trespass are:

1. That the defendant,

2. in the State of Colorado, at or about the date and place charged,

3. knowingly and unlawfully entered or remained in a dwelling of another.

In Instruction 23, the court defined "[u]nlawfully [e]nter or [r]emain" as to "enter or remain in or upon premises when [the person] is not licensed, invited, or otherwise privileged to do so." The court further instructed the jury that "[defendant] maintains he is Not Guilty of … First Degree Criminal Trespass because he had permission to enter, and therefore did not enter unlawfully."

¶ 9 Defendant's counsel also tendered the following instruction:

It is a defense to the charge[ ] of … First Degree Criminal Trespass that a defendant had permission to enter.

Previously granted permission to enter premises must be withdrawn before a defendant can be convicted of … First Degree Criminal Trespass.

A person who has possessory rights or occupies the dwelling is authorized to give another person permission to enter; ownership is not required.

¶ 10 As relevant here, defendant's counsel argued that the instruction was justified because the victim had testified that defendant had told her D.H. had let him in, D.H. had stayed at the house for three nights, and there was evidence D.H. had a key to the house.

¶ 11 The court refused to give the instruction, ruling that the other instructions would "accurately and completely advise the jury," and noting, "I'm not satisfied that this instruction is an accurate statement of the law … particularly in connection with the facts … in this case and the reasonable inferences that can be drawn from them."

¶ 12 During deliberations, the jury submitted the following questions: "Would [D.H.] letting [defendant] into [the victim]'s home be considered an unlawful entry? Even without [the victim]'s permission? If he had a key?" Defense counsel again asked the court to give the possessory rights instruction. The court refused, instructing the jury, "Please refer to the definition of 'unlawfully enter or remain' in instruction no. 23. You must consider this instruction and all the other instructions as a whole."

### 2. Analysis

¶ 13 The district court "has a duty to instruct the jury on all matters of law applicable to the case." *Riley v. People,* 266 P.3d 1089, 1092 (Colo.2011). However, a defendant is not entitled to an instruction on a theory of defense unless there is "a scintilla of evidence" (or "some credible evidence") supporting it. *People v. Saavedra–Rodriguez,* 971 P.2d 223, 228 (Colo.1998); *People v. Platt,* 170 P.3d 802, 806 (Colo.App.2007), *aff'd,* 201 P.3d 545 (Colo.2009).

¶ 14 We review de novo whether the defendant has met this burden, considering the evidence in the light most favorable to the defendant. *See Saavedra–Rodriguez,* 971 P.2d at 228; *see also Mata–Medina v. People,* 71 P.3d 973, 979 (Colo.2003); *People v. DeWitt,* 275 P.3d 728, —— –—— (Colo. App.2011).[1]

¶ 15 The victim testified that she had not given D.H. permission to let defendant into her house, and that D.H. told her he had not let defendant in. D.H. testified that he did not let defendant into the house and that the victim had not given him permission to let defendant into the house. There was unrebutted testimony that when the victim came home at 3:15 a.m., D.H. was at the house, but that the victim then took D.H. to his girlfriend's house. There was no evidence that defendant was in the house when

---

1. Because we conclude that the district court did not err by refusing to give the tendered instruction, we need not resolve defendant's and the People's dispute over whether we should review the alleged error under a constitutional harmless error or harmless error standard.

the victim first came home at 3:15 a.m. or before she left very shortly thereafter with D.H. to take D.H. to his girlfriend's house. The victim returned to the house at about 3:45 a.m.

¶ 16 Nonetheless, defendant contends that because the victim testified that defendant had told her that D.H. had let him in, and because none of the other instructions addressed whether D.H. could legally give defendant permission to enter the victim's house, the court erred by refusing to give the possessory rights instruction.

¶ 17 However, earlier in the victim's testimony about her conversations with D.H., defense counsel made a hearsay objection. The prosecutor responded that the testimony was being offered to show the victim's response, "not for the truth of the matter." The court then instructed the jury that "any statement that the witness testifies to having been made by another person is being offered only for a limited purpose to show the effect that statement had ... on her and for no other purpose." Later, defense counsel objected to the victim's testimony that she had not believed that D.H. had let defendant in. The court overruled the objection after the prosecution reiterated that the testimony was "relevant to her state of mind at the time, not for the truth of the matter asserted."

¶ 18 Consequently, considered in context, it is clear that the victim's testimony about what defendant had said was offered only to show the statement's effect on the victim, not for the truth of the matter asserted. *See People v. Robinson,* 226 P.3d 1145, 1151 (Colo.App.2009); *see also* CRE 801(c).[2] Thus, it was not evidence that D.H. had let defendant into the victim's house. *See Golob v. People,* 180 P.3d 1006, 1010 (Colo.2008) (noting that expert witness testimony offered only to show the basis for the expert's findings and opinions is not hearsay because it is not evidence of the matters stated (citing CRE 703 and *Houser v. Eckhardt,* 168 Colo. 226, 233, 450 P.2d 664, 668 (1969))); *Pomeroy v. People,* 116 Colo. 518, 522, 182 P.2d 139,

140–41 (1947) (where a statement is offered for the purpose of impeaching a witness's testimony, it is not evidence of anything other than that the witness's testimony is not credible); *Beverly v. State,* 795 S.W.2d 846, 846–47 (Tex.App.1990) (police officer's testimony that an apartment manager had "trespass warned" the defendant was not hearsay because it was offered to explain the officer's subsequent actions; thus, it was not evidence of any element of the charged offense); *cf. Diaz v. United States,* 223 U.S. 442, 450, 32 S.Ct. 250, 56 L.Ed. 500 (1912) (hearsay evidence admitted *without objection* must be given its probative effect as if it were admissible).[3]

¶ 19 Because there was no evidence that D.H. had let defendant into the victim's house, we conclude that the district court did not err by refusing to give the requested instruction. In any event, we also conclude that the instructions given by the court adequately explained to the jury that if defendant had been invited into the house, he could not be guilty of unlawful entry. This was consistent with defendant's theory that either the victim or D.H. had permitted him to enter the house.

¶ 20 Similarly, because the instructions given by the court adequately explained to the jury that if defendant had been invited into the house, he could not be found guilty of unlawful entry, the court did not abuse its discretion by responding to the jury's question by referring it to Instruction 23. *See Leonardo v. People,* 728 P.2d 1252, 1255 (Colo. 1986); People v. Thornton, 251 P.3d 1147, 1152 (Colo.App. 2010).

### B.  Speedy Trial

#### 1.  Statutory Speedy Trial

¶ 21 Defendant contends that the district court erred by failing to dismiss the habitual criminal charges because the court set the first habitual criminal hearing beyond his speedy trial deadline under section 18–1–405(1), C.R.S.2011. Specifically, he asserts

---

**2.**  Defendant's counsel conceded at oral argument that the statement was not offered for the truth of the matter asserted.

**3.**  We also note that, at most, the statement was evidence that defendant had said D.H. had let him into the house.

that the court erred by concluding that the charges were not subject to that section. We disagree.

### a. Applicable Law

¶ 22 Defendant's contention raises a question of statutory interpretation. We review such a question de novo. *Clark v. People,* 221 P.3d 447, 448 (Colo.App.2009); *People v. Atencio,* 219 P.3d 1080, 1081 (Colo.App.2009).

¶ 23 When interpreting a statute, our primary goals are to determine and give effect to the General Assembly's intent. *Clark,* 221 P.3d at 448. To do so, we first look to the statute's plain language, giving the words and phrases therein their plain and ordinary meanings. *Id.; Atencio,* 219 P.3d at 1081. We consider the statutory scheme as a whole, "giving consistent, harmonious, and sensible effect to all its parts." *People v. Smith,* 254 P.3d 1158, 1161 (Colo.2011). And we will not " 'interpret a statute in ways that defeat the legislature's obvious intent, or render part of the statute either meaningless or absurd.' " *People v. Berry,* 292 P.3d 954, 957 (Colo.App.2011) (quoting *People v. McIntier,* 134 P.3d 467, 472 (Colo.App.2005)). If we determine that the statutory language is clear and unambiguous, we enforce the statute as written, without resorting to other rules of statutory construction. *People v. Marsh,* — P.3d —, —, 2011 WL 6425492 (Colo.App.2011).

### b. Analysis

¶ 24 Section 18–1–405(1) provides:
[I]f a defendant is not brought to trial on the issues raised by the complaint, information, or indictment within six months from the date of the entry of a plea of not guilty ... the pending charges shall be dismissed, and the defendant shall not again be indicted, informed against, or committed for the same offense, or for another offense based upon the same act or series of acts arising out of the same criminal episode.

¶ 25 Here, after the jury trial, the district court set the first habitual criminal hearing for May 23, 2008. Defendant moved for the court to conduct the habitual criminal proceedings before May 14, 2008, the expiration of his speedy trial period under section 18–1–405(1). He asserted that the habitual criminal charges were "issues raised by the ... information," and thus subject to that section's deadline. The People responded that habitual criminal charges are not substantive offenses, but rather sentence enhancers, and therefore are not "issues raised by the ... information" for the purpose of section 18–1–405(1).

¶ 26 At the May 23 hearing, defendant moved to dismiss the habitual criminal charges on statutory and constitutional speedy trial grounds. The court denied the motion, concluding, as relevant here, that the charges were sentence enhancers, and therefore were not subject to section 18–1–405(1).

¶ 27 We agree with the district court that habitual criminal charges are not subject to section 18–1–405(1)'s speedy trial deadline, for two reasons.

¶ 28 First, though section 18–1–405(1) initially refers to "issues raised by the complaint, information, or indictment," it later provides that, if the deadline set forth therein is violated, a defendant cannot "again be indicted ... for the same offense, or for another offense ... arising out of the same criminal episode." This context makes clear that the term "issues raised" is limited to offenses. An offense is "a violation of, or conduct defined by, any state statute for which a fine or imprisonment may be imposed." § 18–1–104(1), C.R.S.2011. Because habitual criminal charges are merely sentence enhancers affecting the degree of punishment imposed, rather than substantive offenses for which the punishment is imposed, they are not offenses, and hence are not "issues raised by the complaint, information, or indictment" within the meaning of section 18–1–405(1). *See Vega v. People,* 893 P.2d 107, 111 (Colo.1995) (noting that under section 18–1–104(1)'s definition of offense, there is a "distinction between statutory provisions that create a substantive offense and 'sentence enhancers' which merely impact the degree of punishment imposed"); *People v. Schreiber,* 226 P.3d 1221, 1223 (Colo.App. 2009) (a statutory provision is a sentence enhancer, not a substantive offense, where

"(1) a defendant may be convicted of the underlying offense without any proof regarding the sentence enhancer; and (2) the sentence enhancement provision only increases the potential punishment"); *People v. Hodge,* 694 P.2d 1277, 1280 (Colo.App.1984) ("habitual criminal charges are not substantive offenses"); *see also* § 18–1.3–803(1), (2), C.R.S. 2011 (referring to a "substantive offense" as a charge for which there has been a conviction before the habitual criminal hearing is conducted and to an "offense" as an underlying felony conviction in another case on which the habitual offender charge is based).[4]

¶ 29 Second, section 18–1.3–803(1) requires the court to conduct a hearing on habitual criminal charges "[a]s soon as practicable," and provides that the hearing is to be conducted after trial of the "substantive offense." Because that statute specifically relates to habitual criminal charges, and sets forth a time for adjudicating such charges, it prevails over section 18–1–405(1)'s generally applicable six-month requirement. *See People v. Frazier,* 77 P.3d 838, 841 (Colo.App. 2003) (where statutes conflict irreconcilably, a specific provision prevails over a general one), *aff'd,* 90 P.3d 807 (Colo.2004); *see also Martin v. People,* 27 P.3d 846, 860–61 (Colo. 2001) (sex offender probation statute is more specific than general sentencing scheme for felons).

¶ 30 Therefore, we conclude that the district court did not err by refusing to dismiss the habitual criminal charges under section 18–1–405(1).

4. We also observe that section 18–1–405(1) provides that a defendant must be "brought to *trial* on the issues raised by the complaint, information, or indictment...." (Emphasis added.) However, section 18–1.3–803(1), requires only "a separate sentencing hearing" for habitual criminal charges conducted by the judge "who presided at trial." This difference in terms is another indication that the General Assembly did not intend for the term "issues raised" to include habitual criminal charges. *See Colo. Div. of Emp't & Training v. Accord Human Res., Inc.,* 2012 CO 15, ¶ 18, 270 P.3d 985 (" 'the use of different terms signals an intent on the part of the General Assembly to afford those terms different meanings' " (quoting *Robinson v. Colo.*

### 2. Constitutional Speedy Trial

¶ 31 Defendant also contends that the district court's delay in sentencing him violated his constitutional right to a speedy trial. We are not persuaded.

¶ 32 A criminal defendant has a constitutional right to a speedy trial. *People v. Glaser,* 250 P.3d 632, 635 (Colo.App.2010). This right extends through the sentencing phase of a prosecution. *Moody v. Corsentino,* 843 P.2d 1355, 1363 (Colo.1993); *People v. Sandoval–Candelaria,* —— P.3d ——, ——, 2011 WL 2186433 (Colo.App.2011).

¶ 33 To determine whether a defendant's speedy trial right has been violated, a court must consider the length of the delay, the reasons for the delay, the defendant's assertion of the right to or demand for a speedy trial, and prejudice to the defendant. *Sandoval–Candelaria,* —— P.3d at ——; *People v. Brewster,* 240 P.3d 291, 299 (Colo. App.2009). Though the court must consider these factors in combination, if the length of the delay is not presumptively prejudicial, it need not inquire further into the other factors. *Sandoval–Candelaria,* —— P.3d at ——; *Glaser,* 250 P.3d at 635. In a speedy trial analysis concerning the sentencing phase, the relevant period of delay is that between the date of conviction and the date the court imposes its sentence. *See Sandoval–Candelaria,* —— P.3d at ——; *see also United States v. Nelson–Rodriguez,* 319 F.3d 12, 60 (1st Cir.2003); *State v. Azania,* 865 N.E.2d 994, 998–99 & n. 9 (Ind.2007); *Commonwealth v. Glass,* 526 Pa. 329, 586 A.2d 369, 372 (1991); *State v. Allen,* 179 Wis.2d 67, 505 N.W.2d 801, 803–04 (App.1993).[5]

*State Lottery Div.,* 179 P.3d 998, 1010 (Colo. 2008))).

5. In *Moody,* the supreme court noted that a defendant's constitutional speedy trial right "attaches at the time a defendant is formally accused by a charging document." 843 P.2d at 1363. Therefore, in analyzing the sentencing delay at issue, it examined the delay between the charges' initiation and their final resolution at the sentencing hearing. *Id.* at 1364 & n. 11. However, the cases it cited considered only the delay between the conviction or guilty plea and sentencing. *See id.* at 1363; *Burkett v. Cunningham,* 826 F.2d 1208, 1210, 1223 (3d Cir.1987); *Perez v. Sullivan,* 793 F.2d 249, 252–53 (10th Cir.1986); *see also People v. Luu,* 983 P.2d 15, 18

¶34 We will not disturb the district court's factual findings in a constitutional speedy trial determination if the record supports those findings. However, we review the court's application of the four factors de novo. *Glaser*, 250 P.3d at 636.

¶35 Here, the jury found defendant guilty on April 17, 2008. The district court then conducted four hearings on the habitual criminal charges before sentencing defendant on October 14, 2008. Because this six-month period is not presumptively prejudicial, we need not consider the other factors. *See Sandoval–Candelaria*, —— P.3d at —— (sentencing delay of six months and seven days was not presumptively prejudicial); *Glaser*, 250 P.3d at 635 (delay is presumptively prejudicial as it approaches one year).

¶36 Therefore, we conclude that the district court's sentencing of defendant did not violate his constitutional right to a speedy trial.

## C.  Right to a Jury Trial on the Habitual Criminal Charges

¶37 Defendant contends that the district court erred by denying his motion for a jury trial on the habitual criminal charges because *Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), requires such a trial. Multiple divisions of this court have rejected this argument. *See People v. Petschow*, 119 P.3d 495, 509 (Colo.App.2004); *People v. Kyle*, 111 P.3d 491, 504 (Colo.App. 2004); *People v. Benzor*, 100 P.3d 542, 544–45 (Colo.App.2004); *People v. Carrasco*, 85 P.3d 580, 582 (Colo.App.2003). We decline to depart from those decisions.

## D.  Proportionality Review

¶38 Defendant contends that the district court erred by failing to conduct an extended proportionality review of his sentence because (1) none of the offenses underlying the habitual criminal adjudication is grave or serious, and (2) his trespass conviction is not grave or serious. Again, we are not persuaded.

### 1.  Applicable Law

¶39 A criminal defendant is entitled to an abbreviated proportionality review of his sentence when he timely requests one. *People v. Gallegos*, 226 P.3d 1112, 1118 (Colo. App.2009). In conducting the review, the district court first compares the gravity or seriousness of the offense to the severity of the punishment to ascertain whether the defendant has raised an inference of gross disproportionality. *People v. Loyas*, 259 P.3d 505, 513 (Colo.App.2010); *Gallegos*, 226 P.3d at 1118. "A court determines the gravity or seriousness of a crime 'by considering the harm caused or threatened to the victim or to society and the culpability of the offender.'" *Gallegos*, 226 P.3d at 1119 (quoting in part *People v. Deroulet*, 48 P.3d 520, 524 (Colo.2002)). The court need only conduct an extended proportionality review when the abbreviated proportionality review gives rise to an inference of gross disproportionality. *People v. Strock*, 252 P.3d 1148, 1157 (Colo. App.2010); *Gallegos*, 226 P.3d at 1118.

¶40 When conducting an abbreviated proportionality review of a habitual criminal sentence, a reviewing court must scrutinize the gravity or seriousness of the predicate and triggering offenses to determine "'whether in combination they are so lacking in gravity or seriousness'" so as to

(Colo.App.1998) (considering the delay between a resentencing hearing and the imposition of sentence). And a court obviously cannot impose sentence before the defendant has been convicted of or pled guilty to the underlying charge.

Moreover, even if we were to consider the fifteen-month period between charging and sentencing here, we would nonetheless conclude that defendant's constitutional speedy trial right was not violated. The period was still relatively short, nine months of the period were attributable to allowing the trial to occur, and defendant was not prejudiced. *See Perez*, 793 F.2d at 254

(noting that other courts had rejected speedy trial claims where the sentencing delay was considerably longer than the fifteen-month period at issue); *cf. Sandoval–Candelaria*, —— P.3d at —— (violation where the reason for the delay was to allow the court to impose a longer sentence than it could have had it sentenced the defendant earlier). Though defendant argues that the delay prejudiced him because he would have received a lesser sentence had the court dismissed the habitual criminal charges on speedy trial grounds, we cannot presuppose a speedy trial violation in conducting our analysis.

suggest that the sentence is grossly disproportionate." *Deroulet*, 48 P.3d at 524–25 (quoting in part *People v. Gaskins*, 825 P.2d 30, 36 (Colo.1992)); *People v. Cooper*, 205 P.3d 475, 479 (Colo.App.2008). "[I]n most instances the General Assembly's determinations regarding the sentencing of habitual criminals will result in constitutionally proportionate sentences." *Deroulet*, 48 P.3d at 526.

¶ 41 We review de novo whether a sentence is constitutionally proportionate. *Loyas*, 259 P.3d at 513.

### 2. Analysis

¶ 42 First degree criminal trespass is a class 5 felony, the maximum sentence for which is three years imprisonment. §§ 18–4–502, 18–1.3–401(1)(a)(V)(A), C.R.S.2011. Where, as here, a defendant convicted of a class 5 felony has previously been convicted of three felonies, the district court is required to impose a sentence of twelve years imprisonment. §§ 18–1.3–401(1)(a)(V)(A), 18–1.3–801(2)(a), C.R.S.2011.

### a. Predicate Offenses

¶ 43 Defendant's three prior felonies were a 1997 Texas conviction for indecency with a child, and two Texas convictions for failure to register as a sex offender (predicated on the indecency conviction). At the sentencing hearing, defendant asserted that the indecency conviction was based on "a statutory rape sort of statute" in Texas, and concerned sexual contact that occurred when he was twenty years old and the victim was fifteen years old.[6] Consequently, he argued, the offense was not grave or serious because the conduct at issue would not have been felonious had it occurred in Colorado. And, because he would not have had to register in Colorado for such lawful conduct, he also asserted that the failure to register convictions were not grave or serious.

¶ 44 The court concluded that these offenses were grave or serious, stating:

Sexual offenses involving children [cause] harm ... to the victim, the victim's family, and to community standards of behavior. The law imposes heavy sanctions for unlawful sexual behavior with a child. Arguably [defendant]'s offenses of failure to register as a sex offender are also grave and serious because the legislature has deemed registration and ongoing supervision of sex offenders to be essential to community safety and to the rehabilitation of the offender.

¶ 45 We agree with the district court.

¶ 46 We recognize that consensual sexual contact between a fifteen-year-old and a twenty-year-old is not now a felony in Colorado, nor was it at the time of the offense. *See* §§ 18–3–402(1)(e) (sexual assault where a person at least ten years older than the victim inflicts sexual intrusion and the victim is at least fifteen years old but less than seventeen years old), 18–3–405(1), C.R.S.2011 (sexual assault on a child where the victim is less than fifteen years old and the actor is at least four years older than the victim); Ch. 171, sec. 1, § 18–3–402, 1975 Colo. Sess. Laws 628 (no reference to the victim's or the actor's ages); Ch. 171, sec. 1, § 18–3–403(1)(e), (f), 1975 Colo. Sess. Laws 628–29 (second degree sexual assault where the victim is less than fifteen years old and the actor is at least four years older or the victim is less than eighteen years old and the actor is the victim's guardian or responsible for her welfare); Ch. 171, sec. 1, § 18–3–405(1), 1975 Colo. Sess. Laws 630 (same as current section 18–3–405(1)).

¶ 47 However, " 'it makes no difference for the purposes of enhanced punishment that a previously committed crime is not a felony in Colorado if it is a felony where the conviction was had.' " *People v. Drake*, 785 P.2d 1257, 1267–68 (Colo.1990) (quoting *People v. Marquez*, 692 P.2d 1089, 1101 n. 18 (Colo.1984)); *see People v. Lake*, 195 Colo. 454, 460, 580 P.2d 788, 792 (1978) (" 'The possible disparity of treatment between prior [in-state] offenders vis-a-vis pri-

---

6. Defendant's opening brief incorrectly states that defendant was nineteen years old at the time of the offense. The prosecution's exhibits from the habitual criminal hearings establish that the offense occurred on August 6, 1997, and that defendant was born on October 31, 1976. Consequently, he was twenty years old at the time of the offense.

or out-of-State offenders does not vitiate the legislative decision that an individual who has previously elected to violate the criminal standards of the society in which he was found should be treated as an habitual offender.'" (quoting *People v. Parker*, 41 N.Y.2d 21, 390 N.Y.S.2d 837, 359 N.E.2d 348, 351 (1976))).

¶ 48 Thus, defendant's indecency with a child conviction is a felony for habitual criminal purposes. Sexual offenses committed against children are considered grave or serious in Colorado. *See People v. Dash*, 104 P.3d 286, 293 (Colo.App.2004) ("sex offenses are considered particularly heinous crimes"); *People v. Strean*, 74 P.3d 387, 396 (Colo.App. 2002) ("situations in which an adult treats a vulnerable child as a tool for sexual gratification[ ] often caus[e] a devastating and lifelong effect"); *cf. People v. Patnode*, 126 P.3d 249, 261 (Colo.App.2005) (considering the General Assembly's current evaluation of the offenses' seriousness to determine whether the sentence was grossly disproportionate; where the General Assembly had since reduced two of the offenses from felonies to misdemeanors, there was an inference of gross disproportionality). Consequently, we conclude that defendant's indecency with a child conviction is grave or serious.

¶ 49 Moreover, even if we were to assume that it is not grave or serious, we would nonetheless conclude that an extended proportionality review is unnecessary because the failure to register convictions are grave or serious. *See Strock*, 252 P.3d at 1158 ("it is not necessary for each offense to be grave and serious for a court to conclude that the offenses taken together are grave and serious"); *see also Cooper*, 205 P.3d at 481 (even where none of the predicate or triggering offenses is individually grave or serious, they may be sufficiently grave or serious in combination).

¶ 50 Initially, we reject defendant's argument that the failure to register convictions are not grave or serious because he would not have had to register as a sex offender had the conduct occurred in Colorado. Regardless of where the offense occurred, the fact remains that defendant was convicted of a crime requiring registration. His two subsequent failure to register convictions were for new conduct distinct from the earlier indecency conviction. Moreover, because defendant knew that he was required to register, he had a high degree of culpability for failing to do so. *See Strock*, 252 P.3d at 1158 (where a defendant chooses to drive while intoxicated, his culpability weighs in favor of finding that the crime is grave or serious); *cf. Gaskins*, 825 P.2d at 37 (citing a descending scale of culpability ranking acts as malicious, intentional, knowing, reckless, or negligent).

¶ 51 Further, the General Assembly has concluded that "sex offenders present a continuing danger to the public and that a program providing for lifetime treatment and supervision of sex offenders is necessary for the safety, health, and welfare of the state." *Dash*, 104 P.3d at 293; *see* § 18–1.3–1001, C.R.S.2011. Thus, a defendant's failure to register as a sex offender is grave or serious because it threatens harm to society by hindering the state's ability to treat and supervise the sex offender. *See Dash*, 104 P.3d at 293; *see also People v. Nichols*, 176 Cal. App.4th 428, 97 Cal.Rptr.3d 702, 707–08 (2009) (where a defendant fails to register after changing his address, and the police therefore do not have his correct address and information, the failure "thwart[s] the fundamental purpose of the registration law, thereby leaving the public at risk").

¶ 52 Therefore, we conclude that the district court did not err by concluding that defendant's Texas convictions were grave or serious.

### b. Triggering Offense

¶ 53 At the sentencing hearing, the district court concluded that defendant's trespass conviction was grave or serious because

defendant broke into the victim's home during the early morning hours and encountered her naked and refused to leave despite her repeated demands that he leave. This caused the victim considerable fright and upset, which was reflected during her trial testimony as she recounted

occurrences of the evening before and at the time of the offense in her house.

The court takes into account that this was in the early morning hours of the day in question, and [the victim] had returned to her home after work and was preparing to retire when she was confronted by [defendant].

¶ 54 Defendant contends that the court erred by finding that defendant "broke into" the victim's house after the jury had acquitted him of second degree burglary because "breaking into" a building is an element of second degree burglary, but not of first degree trespass. *See* §§ 18-4-203(1), 18-4-502, C.R.S.2011. However, the fact the jury found defendant not guilty of second degree burglary does not mean it found that defendant had not broken into the victim's house. The jury may also have acquitted defendant of that charge because it found that he did not enter the house "with intent to commit ... a crime" therein. *See* § 18-4-203(1).[7] And the court's finding that defendant "broke in" is supported by the victim's testimony that, shortly after defendant left, she discovered that the window screen in her son's bedroom had been broken, and that defendant surprised her by appearing in her house.

¶ 55 Defendant also asserts that the court erroneously found that he had refused to leave the house because the victim testified that he was trying to leave, but could not find his shoes. However, the victim also testified that when defendant said he could not find his shoes, she said, "I don't care, get out of my house." Defendant did not leave, however, until she called 9-1-1.

¶ 56 Further, the conduct at issue occurred around 3:45 a.m. And the victim testified that she was "scared ... [and] freaked out" be-

cause she did not know how defendant had gotten into her house. *See Strock*, 252 P.3d at 1157 (in determining whether a crime is grave or serious, the court must consider the harm caused to the victim).

¶ 57 First degree criminal trespass may not be a per se grave or serious offense. *See Patnode*, 126 P.3d at 260-62 (criminal trespass is arguably not grave or serious); *see also Gaskins*, 825 P.2d at 39 (attempt to commit criminal trespass is not intrinsically very grave or serious); *cf. Loyas*, 259 P.3d at 514 (criminal trespass with a violent crime sentence enhancer is grave or serious because it is a violent crime that presents an extraordinary risk of harm to society). However, we agree with the district court that the circumstances of the trespass conviction in this case make defendant's conviction grave or serious.[8]

¶ 58 Because we have concluded that defendant's predicate and triggering offenses are grave or serious, we further conclude that the district court did not err by determining that defendant had not raised an inference of gross disproportionality. It follows that the court did not err by failing to conduct an extended proportionality review of his sentence.

¶ 59 The judgment and sentence are affirmed.[9]

Judge CASEBOLT and Judge HAWTHORNE concur.

---

7. Defendant's counsel expressly asked the jury to acquit defendant of the charge on this basis.

8. Even if we were to conclude that the trespass conviction is not grave or serious, we would nonetheless conclude that defendant's offenses in combination are grave or serious. *See Strock*, 252 P.3d at 1158; *Cooper*, 205 P.3d at 481.

9. Shortly before oral argument, defendant submitted supplemental citations of authority. All but one of the cited cases, however, were decided before the briefing in this case was completed. C.A.R. 28(j) allows a party to bring to the court's attention "new" authority decided after the briefs have been filed. The rule "does not extend an open invitation to counsel to conduct additional research after the close of briefing and then present the fruits of such research to the court on the eve of argument." *Glover v. Innis*, 252 P.3d 1204, 1212 (Colo.App.2011). Therefore, we strike the supplemental citations of authority except as to the last case cited.