The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Richard Alfred STROCK, Defendant–Appellant.

No. 06CA1831.

Colorado Court of Appeals, Div. I.

Aug. 19, 2010.

John W. Suthers, Attorney General, Susan E. Friedman, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Ari Krichiver, Deputy State Public Defender, Anne T. Amicarella, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge TAUBMAN.

Defendant, Richard Alfred Strock, appeals the judgment of conviction entered on jury verdicts finding him guilty of vehicular homicide while driving under the influence, driving under the influence, and driving under the influence per se,[1] as well as his sentence to forty-eight years in the Department of Corrections (DOC). We affirm.

## I. Background

This case stems from a car accident that occurred on January 29, 2005. Strock's wife was killed after the vehicle Strock and his wife were traveling in collided with a guardrail and cement barrier on Interstate 70 in Denver. Strock was charged with various offenses and, following a jury trial, he was convicted of vehicular homicide while driving

under the influence, driving under the influence, and driving under the influence per se. After finding Strock to be a habitual criminal based on two prior felony drug convictions and two prior felony convictions for driving after revocation prohibited, the trial court sentenced Strock to forty-eight years in the custody of the Department of Corrections.

## II. Prosecutorial Misconduct

Strock contends his conviction should be reversed because of prosecutorial misconduct. We disagree.

### A. Standard of Review

The determination of whether a prosecutor's statements constitute inappropriate prosecutorial argument is an issue within the trial court's discretion, *People v. Foster*, 971 P.2d 1082, 1085 (Colo.App.1998), and we will not disturb its rulings pertaining thereto in the absence of a showing of gross abuse of discretion resulting in prejudice and a denial of justice. *People v. Moody*, 676 P.2d 691, 697 (Colo.1984); *People v. Suazo*, 87 P.3d 124, 128 (Colo.App.2003). When a defendant objects at trial, the error will be regarded as harmless if there is no reasonable probability that it contributed to the defendant's conviction. *Crider v. People*, 186 P.3d 39, 42 (Colo.2008).

When a defendant does not object at trial, we review whether an error requires reversal under the plain error standard. *People v. James*, 117 P.3d 91, 95 (Colo.App. 2004). "To constitute plain error, prosecutorial misconduct must be flagrant or glaringly or tremendously improper, and it must so undermine the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction." *People v. Weinreich*, 98 P.3d 920, 924 (Colo.App.2004), *aff'd*, 119 P.3d 1073 (Colo.2005). Prosecuto-

---

1. Strock was charged with vehicular homicide while driving under the influence pursuant to section 18–3–106(1)(b)(I), C.R.S.2009 ("If a person operates or drives a motor vehicle while under the influence of alcohol ..., and such conduct is the proximate cause of the death of another, such person commits vehicular homicide. This is a strict liability crime."); driving under the influence pursuant to section 42–4–

1301(1)(a), C.R.S.2009 ("It is a misdemeanor for any person who is under the influence of alcohol ... to drive a motor vehicle or vehicle."); and driving under the influence per se pursuant to section 42–4–1301(2)(a), C.R.S.2009 ("It is a misdemeanor for any person to drive a motor vehicle or vehicle when the person's [blood alcohol content] is 0.08 or more at the time of driving or within two hours after driving.").

rial misconduct in closing argument rarely constitutes plain error. *Id.*

Prosecutorial misconduct constitutes plain error only when there is a substantial likelihood that it affected the verdict or that it deprived the defendant of a fair and impartial trial. *People v. Sommers,* 200 P.3d 1089, 1096 (Colo.App.2008).

### B. Applicable Law

Claims of improper argument must be evaluated in the context of the argument as a whole and in light of the evidence before the jury. *People v. Geisendorfer,* 991 P.2d 308, 312 (Colo.App.1999). Defense counsel's failure to object is a factor that may be considered in examining the impact of a prosecutor's argument and may "demonstrate defense counsel's belief that the live argument, despite its appearance in a cold record, was not overly damaging." *People v. Rodriguez,* 794 P.2d 965, 972 (Colo.1990) (quoting *Brooks v. Kemp,* 762 F.2d 1383, 1397 n. 19 (11th Cir.1985)). A prosecutor has wide latitude to make arguments based on facts in evidence and reasonable inferences drawn from those facts. *People v. McBride,* 228 P.3d 216, 221 (Colo.App.2009).

To determine whether prosecutorial misconduct requires reversal, we must evaluate the severity and frequency of the misconduct, any curative measures taken by the trial court to alleviate the misconduct, and the likelihood that the misconduct constituted a material factor leading to the defendant's conviction. *People v. Merchant,* 983 P.2d 108, 114 (Colo.App.1999).

### C. Appealing to Jury's Sympathies

Strock contends the prosecutor twice improperly appealed to the jury's sympathies during closing argument. We disagree.

### 1. "Lying on a Slab"

We reject Strock's contention that the prosecutor's statement, "It could just as easily have been [a witness] who was lying on that slab in the coroner's office," was misconduct because it appealed to the sympathies of the jury and the trial court erred in overruling his objection.

This is the only instance of alleged prosecutorial misconduct which Strock preserved at trial, and, thus we review for an abuse of discretion.

Here, the witness to whom the prosecutor referred testified that when Strock's vehicle approached him rapidly, he braced himself for a collision. The witness also testified that Strock's vehicle skidded just as he thought a crash was imminent and then crossed several lanes before hitting the center median on the highway. Accordingly, we conclude the trial court did not abuse its discretion in ruling that the statement was a reasonable inference from the evidence in the record and did not constitute misconduct. *McBride,* 228 P.3d at 221.

### 2. "Loaded Gun"

Strock also contends the prosecutor improperly appealed to the jury's sympathies by stating during closing argument, "There were other people on that highway that night traveling west on I–70, and he was a loaded gun for every single one of them." We disagree.

In making a closing argument, a prosecutor may ordinarily "employ rhetorical devices and engage in oratorical embellishment and metaphorical nuance." *People v. Collins,* 250 P.3d 668, 678 (Colo.App.2010) (quoting *People v. Allee,* 77 P.3d 831, 837 (Colo.App.2003)). However, such embellishments are improper if they induce the jury to determine guilt on the basis of passion or prejudice, inject irrelevant issues into the case, or accomplish some other improper purpose. *People v. Bowles,* 226 P.3d 1125, 1132–33 (Colo.App.2009).

We conclude there was ample evidence in the record to support the jury's conclusion that Strock's conduct was the proximate cause of the victim's death. Several witnesses testified that Strock was driving the vehicle and that there was no indication that another vehicle was involved in the accident. Evidence was also presented of Strock's intoxication at the time of the accident. We conclude the prosecutor's statement was a proper oratorical embellishment or meta-

phorical nuance and was not error, much less plain error.

### D.   Misstatement of Law

Strock contends the prosecutor twice misstated the law when he discussed the proximate cause element of vehicular homicide during closing argument. First, he contends the prosecutor misstated the law when he said that if Strock had been broadsided when someone else ran a red light, "it would still be his fault because he was drunk and he got behind the wheel of the car." Second, Strock contends the prosecutor engaged in misconduct by stating that no phantom car caused the accident and even if there had been ten phantom cars, Strock's conduct caused the victim's death. The prosecutor's comment that no phantom car caused the accident was in response to Strock's argument that he was not the proximate cause of the accident because another vehicle had struck his vehicle; Strock does not challenge this portion of the prosecutor's statement. Rather, Strock objects to the prosecutor's statement that even if ten phantom cars had collided with Strock's vehicle, he was still the proximate cause of the victim's death.

Strock alleges that these statements misstated the elements of proximate cause and led the jury to erroneously conclude that it only had to determine Strock drove while intoxicated to convict him of vehicular homicide. We conclude that the prosecutor erred in making these statements, but that they do not rise to the level of plain error.

■■■■■   To prove vehicular homicide, the People must show that the defendant's reckless driving was the proximate cause of the victim's death. *People v. Garner,* 781 P.2d 87, 89 (Colo.1989) (in other words, that "the defendant voluntarily drove while intoxicated and that his driving resulted in the victim's death"); *People v. Reynolds,* 252 P.3d 1128, 1134 (Colo.App.2010). Proximate cause means a cause which in natural and probable sequence produced the claimed injury. *People v. Prieto,* 124 P.3d 842, 847 (Colo.App. 2005). The *Garner* court also held that the conduct at issue for purposes of proximate cause is the voluntary act of driving while intoxicated, and the People do not need to

prove that "the intoxication affected the driver's operation [of the vehicle] in a manner that results in a collision." *Garner,* 781 P.2d at 89; *see also People v. Grassi,* 192 P.3d 496, 499–500 (Colo.App.2008) (court upheld a jury instruction that stated, "For purpose[s] of the strict liability crime of Vehicular Homicide, 'proximate cause' means the voluntary act of driving while intoxicated.").

■■■■   We conclude the prosecutor's statements were erroneous because they did not require the jury to find that Strock's driving while intoxicated caused the victim's death.

■■■■   However, we conclude that the prosecutor's misstatements were offset by the following four factors: (1) the prosecutor also told the jury during closing argument that it had to prove Strock "is the person who set in motion the actions that caused the death" of the victim and "if he had not gotten in that car, it wouldn't have happened"; (2) the jury was instructed that to convict Strock of vehicular homicide it must determine that Strock was driving while intoxicated and that his conduct was a proximate cause of the victim's death; (3) the jury was properly instructed regarding the definition of proximate cause; and (4) both attorneys referred to that definition during closing arguments.

Thus, even though the prosecutor's statements were erroneous, they were more than offset by the above factors and ample evidence that Strock's driving while intoxicated was a proximate cause of his wife's death. Accordingly, we conclude that the statements were not "flagrant or glaringly or tremendously improper" and the errors were not plain. *See Weinreich,* 98 P.3d at 924.

### E.   Burden of Proof

Strock contends the prosecutor's statements during closing argument that Strock did not prove that the victim was wearing a seatbelt or that the victim got out of the vehicle before being hit by another vehicle were improper because they suggested that Strock had the burden to prove his defense theories beyond a reasonable doubt. Again, we disagree.

A division of this court has held that a prosecutor's statement in closing argument that no evidence supported an aspect of the defense's factual contention was not an impermissible comment on the defendant's right to remain silent. *People v. Gibson*, 203 P.3d 571, 577 (Colo.App.2008). Another division of this court has held that a prosecutor's comment on the lack of evidence supporting a defense theory was not plain error because it did "not necessarily suggest that it would be improper for the jury to find the defendant not guilty in the absence of such evidence." *People v. Herrera*, 1 P.3d 234, 240 (Colo.App.1999); *see also People v. Esquivel–Alaniz*, 985 P.2d 22, 24 (Colo.App.1999) (prosecutor's comment on lack of evidence supporting defense theory did not improperly shift the burden of proof).

■ Following *Gibson, Herrera,* and *Esquivel–Alaniz*, we conclude that the prosecutor's comments on the lack of evidence to support Strock's defense theory that he was not driving at the time of the accident did not improperly shift the burden of proof to Strock. Thus, we conclude there was no error, much less plain error.

### F. Cumulative Effect

Finally, Strock contends that the cumulative effect of the prosecutor's comments impaired his right to a fair trial and an impartial jury. We disagree.

■ Although an appellate court may find that individual errors do not require reversal, numerous irregularities may in the aggregate show the absence of a fair trial. *People v. Jenkins*, 83 P.3d 1122, 1130 (Colo. App.2003). Cumulative error applies only if the trial court committed numerous errors; a defendant's mere assertions of error are insufficient to warrant reversal. *People v. Blackwell*, 251 P.3d 468, 477 (Colo.App.2010). We have concluded that the prosecutor's statements about proximate cause were erroneous, but did not rise to the level of plain error; we also concluded the prosecutor's other challenged statements were proper. Thus, we conclude there is no cumulative error.

### III. Sufficiency of the Evidence

Strock contends that the prosecutor failed to prove beyond a reasonable doubt that he was a habitual criminal. We disagree.

### A. Counts Five and Eight

Strock first contends that counts five and eight in the information insufficiently alleged a felony offense. We disagree.

We review the sufficiency of the evidence de novo. *People v. Robb*, 215 P.3d 1253, 1257 (Colo.App.2009).

■ The People have the burden of proving beyond a reasonable doubt that the defendant has been previously convicted as alleged in the information charging the habitual criminal counts. § 18–1.3–803(4)(b), C.R.S.2009. Colorado has followed the modern trend of testing the sufficiency of the information based on the fundamental objectives the information serves rather than technical pleading requirements of the common law. *People v. Wilson*, 114 P.3d 19, 25 (Colo. App.2004). When the alleged defect in an information is one of form, the defendant must show prejudice from the lack of specificity. *People v. Richardson*, 58 P.3d 1039, 1045 (Colo.App.2002). Reversal is not warranted if the defendant had adequate notice of the underlying offense. *Id.*

■ Strock contends that count five and count eight are insufficient because they allege that he pleaded guilty in 01CR428 and 94CR2161 "to the crime of Habitual Traffic Offender, a felony," but that' classification as a habitual traffic offender is not a crime. The People contend that while the information should have stated that Strock was convicted of the offenses of aggravated driving after revocation, § 42–2–206(1)(b)(I), C.R.S. 2009, and driving after revocation prohibited, § 42–2–206(1)(a)(I), C.R.S.2009, those offenses appeared on each mittimus admitted into evidence at Strock's habitual criminal adjudication and the offenses are class six felonies that are listed under the "Habitual Offenders" offenses in Title 42, Part 2, rather than as the specific offenses. We conclude that Strock has failed to show that he was prejudiced by the information's failure to specify the felony offenses in counts five and

eight or that he did not have adequate notice of the underlying offenses to enable him to prepare a defense. Thus, we conclude there was no reversible error.

### B. Counts Seven and Eight

■ Strock contends that insufficient evidence supports his habitual criminal conviction because counts seven and eight list incorrect dates of conviction. We disagree.

■ The People must prove that the defendant had three felony convictions based on charges separately brought and tried, arising out of separate criminal episodes. § 18–1.3–801(2), C.R.S.2009. The time of a prior conviction for the purposes of the habitual criminal statute is the date of the judgment of conviction. *People v. Jacquez*, 196 Colo. 569, 572, 588 P.2d 871, 873–74 (1979).

Strock contends that count seven is insufficient because it alleges he pleaded guilty on a particular date, which is not corroborated elsewhere in the record. We disagree, because no statute requires that the People establish when Strock pleaded guilty. Here, count seven alleged the judgment of conviction in 95CR176 was entered on May 23, 1995, and Strock was sentenced on that date. The mittimus confirmed those allegations. Thus, we conclude that the People sufficiently proved the date of the judgment of conviction alleged in count seven.

Similarly, Strock contends count eight is insufficient. Count eight alleged that Strock was sentenced in 94CR2161 on May 9, 1995, but that case's mittimus shows that a judgment of conviction was entered one day earlier. However, we conclude that this discrepancy does not require reversal because Strock failed to show that he was prejudiced by the error.

### C. Count Five

Strock contends that because the People failed to present evidence sufficient to establish his identity for count five, his habitual criminal conviction should be vacated. We disagree.

When the sufficiency of the evidence is challenged on appeal, the court must determine "whether any rational trier of fact might accept the evidence, taken as a whole and in the light most favorable to the prosecution, as sufficient to support a finding of guilt beyond a reasonable doubt." *People v. Buckner*, 228 P.3d 245, 251–52 (Colo.App. 2009) (quoting *People v. McIntier*, 134 P.3d 467, 471 (Colo.App.2005)).

■ In habitual criminal proceedings, the prosecutor has the burden to prove beyond a reasonable doubt that the accused is the person named in the prior conviction. *People v. Moore*, 226 P.3d 1076, 1088 (Colo.App. 2009).

A division of this court has held that the element of identity in habitual criminal proceedings is not satisfied by proof that the defendant has the same name and birth date as the person previously convicted. *People v. Cooper*, 104 P.3d 307, 312 (Colo.App.2004). However, the division held that a probation officer's identification of the defendant as the person depicted in photographs attached to two different cases based on probation records was sufficient evidence to prove identity. *Id.*

In *People v. Benton*, 829 P.2d 451, 454 (Colo.App.1991), a division of this court held that lack of a fingerprint card does not render evidence insufficient to prove identity where the defendant was given the same prison number as he was given for a previous felony and his photograph was taken when he was incarcerated for his second felony. Offering evidence of fingerprint cards and expert testimony linking those fingerprints to the defendant is a valid method for proving identity, but it is not the only way to prove identity. *People v. Carrasco*, 85 P.3d 580, 583 (Colo.App.2003).

■ Strock contends the People did not prove beyond a reasonable doubt that he was convicted of the felony alleged in count five because the People did not offer any fingerprint evidence associated with that case number.

The trial court concluded that sufficient circumstantial evidence proved beyond a reasonable doubt that Strock committed the class six felony in 01 CR428. Based on our review of the record, we perceive no error in

the trial court's conclusion. First, the mittimus in that case contained Strock's DOC inmate number. In addition, certified records from the trial court stated that a person with Strock's name and birth date was convicted of a class six felony. A DOC official testified that photographs of the person convicted in 01 CR428 bore a "striking resemblance" to Strock and listed Strock's name and birth date. Furthermore, a fingerprint card contained Strock's inmate number, name, and birth date. The trial court concluded that there was sufficient circumstantial evidence to conclude that the fingerprint card relates to 01 CR428. We conclude the evidence presented was sufficient to prove beyond a reasonable doubt that Strock was convicted of the felony alleged in count five. *See Moore,* 226 P.3d at 1089.

### IV. Extended Proportionality Review

Strock contends the trial court erred by declining to conduct an extended proportionality review of his sentence because his conviction for vehicular homicide while driving under the influence was not grave and serious. We disagree.

### A. Standard of Review

Whether a sentence is constitutionally proportionate is a question of law that we review de novo. *People v. Cooper,* 205 P.3d 475, 479 (Colo.App.2008); *People v. Medina,* 926 P.2d 149, 150 (Colo.App.1996). When a defendant challenges the proportionality of his or her sentence on appeal, and the trial court has conducted only an abbreviated proportionality review, an appellate court may remand if an extended proportionality review is required. *Cooper,* 205 P.3d at 480.

### B. Proportionality Review

Upon a timely request, a defendant is entitled to an abbreviated proportionality review, *People v. Deroulet,* 48 P.3d 520, 521 (Colo.2002), which requires the court to compare the gravity of the offense to the severity of the punishment to determine whether the defendant has raised an inference of gross disproportionality. *People v. McNally,* 143 P.3d 1062, 1063 (Colo.App.2005).

"When conducting an abbreviated proportionality review under the habitual criminal statute, a reviewing court must scrutinize the offenses in question to determine 'whether in combination they are so lacking in gravity or seriousness' so as to suggest that the sentence is grossly disproportionate." *People v. Gallegos,* 226 P.3d 1112, 1118–19 (Colo.App.2009) (quoting *Deroulet,* 48 P.3d at 524–25). Whether a crime is grave and serious is a "somewhat imprecise" inquiry and requires a comparison of the harm caused to the victim or society and the culpability of the defendant. *People v. Gaskins,* 825 P.2d 30, 36 (Colo.1992). "[I]n almost every case, the abbreviated proportionality review will result in a finding that the sentence is constitutionally proportionate, thereby preserving the primacy of the General Assembly in crafting sentencing schemes." *Deroulet,* 48 P.3d at 526; *see also People v. Cruse,* 58 P.3d 1114, 1122 (Colo.App.2002) (the legislatively mandated sentencing range for grave and serious crimes will be constitutionally proportionate in almost every instance).

The court need only conduct an extended proportionality review if the abbreviated proportionality review gives rise to an inference of gross disproportionality. *Close v. People,* 48 P.3d 528, 536 (Colo.2002). In an extended proportionality review, a court, among other things, compares the defendant's sentence to sentences imposed on those who committed the same crime in this jurisdiction and in other jurisdictions. *People v. Hoover,* 165 P.3d 784, 804 (Colo.App. 2006).

Certain crimes have been held to be grave and serious per se for the purposes of proportionality review. *Deroulet,* 48 P.3d at 524 (including aggravated robbery, robbery, burglary, attempted burglary, accessory to first degree murder, and drug-related crimes); *Close,* 48 P.3d at 537. The *Gaskins* court concluded, "Sale of narcotic drugs is viewed with great seriousness because of the grave societal harm caused by sale of illegal drugs and the evils associated with their use," and "[t]he crimes of aggravated robbery, robbery, burglary, and accessory to first-degree

murder involve violence or potential for violence by their very nature." 825 P.2d at 37.

In *People v. Allen,* 111 P.3d 518, 520 (Colo.App.2004), a division of this court rejected the defendant's argument that the crimes determined to be grave and serious in *Deroulet* and *Close* are an exclusive list. The *Allen* division then concluded that the defendant's convictions for eluding a police vehicle and possession of a gun by a convicted felon are also grave and serious offenses because the conduct in those offenses poses a great risk of harm to the public. Additional offenses that Colorado appellate courts recognize as grave and serious include felony menacing, *People v. Cisneros,* 855 P.2d 822, 830 (Colo.1993); engaging in a riot, *People v. Martinez,* 83 P.3d 1174, 1180 (Colo.App. 2003); and sexual assault on a child and sexual assault on a child by a person in a position of trust, *People v. Strean,* 74 P.3d 387, 396 (Colo.App.2002). For crimes already determined to be grave and serious under Colorado law, a court need not consider the harm caused or threatened to the victim or to society and the culpability of the defendant. The court may simply consider the harshness of the penalty. *Close,* 48 P.3d at 537.

In conducting an abbreviated proportionality review here, the trial court considered Strock's conviction of vehicular homicide while driving under the influence, the triggering crime, as well as four predicate felony offenses.

Strock contends his sentence was disproportionate and he is entitled to an extended proportionality review because the triggering offense was not grave and serious. He also contends that two of the predicate offenses involving aggravated driving after revocation are not grave and serious, but concedes his other two predicate felonies, possession of narcotics and possession of narcotics with intent to distribute, are per se grave and serious crimes.

Colorado's appellate courts have not considered whether vehicular homicide while driving under the influence is a grave and serious offense. We disagree with Strock and conclude the offense of vehicular homicide while driving under the influence is grave and serious per se.

We conclude that vehicular homicide is at least as grave and serious as other offenses that Colorado's appellate courts have recognized as grave and serious per se. Unlike many of the offenses already recognized as grave and serious because they present a serious risk of harm to the victim or society, vehicular homicide while driving under the influence necessarily involves the death of a person as a result of the defendant's conduct. Further, it results from a defendant choosing to drive while intoxicated. Thus, we conclude the offense of vehicular homicide while driving under the influence is grave and serious per se because of the grave harm caused and the culpability of the defendant's conduct.

We also reject Strock's contention that, collectively, his offenses were not grave and serious because two of his predicate offenses were traffic violations that did not involve a grave threat to society.

Where a triggering crime in a habitual criminal case is grave and serious, generally only an abbreviated proportionality review is required. *Close,* 48 P.3d at 538. Furthermore, it is not necessary for each offense to be grave and serious for a court to conclude that the offenses taken together are grave and serious. *People v. Reese,* 155 P.3d 477, 480 (Colo.App.2006) (forty-eight-year sentence not grossly disproportionate even though three of five predicate offenses were not grave and serious); *Cooper,* 205 P.3d at 481 (even assuming that triggering and predicate theft offenses were not individually grave and serious per se, in combination the offenses were sufficiently grave and serious to support defendant's eighteen-year sentence).

Strock relies on *People v. Patnode,* 126 P.3d 249, 261 (Colo.App.2005), where a division of this court held that a defendant's predicate driving offenses were not grave and serious. However, *Patnode* is distinguishable because Patnode's traffic offenses involved a speeding violation without aggravating factors. *Id.*

Here, however, Strock had a blood alcohol level of .256 at the time of the accident and an extensive history of traffic violations, including six driving under the influence convictions and multiple convictions for driving after revocation of license. Furthermore, unlike in *Patnode*, Strock's two predicate felony traffic offenses involved damages and driving under the influence after his license was revoked.

Thus, we conclude that Strock's triggering and predicate offenses in combination are grave and serious given the actual harm to the victim, the harm to society, and Strock's culpability. We further conclude that Strock's sentence to forty-eight years in the Department of Corrections was not grossly disproportionate. Thus, we conclude the trial court did not err in denying Strock's request for an extended proportionality review.

Judgment of conviction and sentence affirmed.

Justice ROVIRA * and Judge CRISWELL * concur.