24CA1199 Peo v Lee 01-29-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA1199
El Paso County District Court No. 17CR2427
Honorable Erin Sokol, Judge

---

The People of the State of Colorado,

Plaintiff-Appellant,

v.

Teral Stafin Lee,

Defendant-Appellee.

---

SENTENCE REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division VI
Opinion by JUDGE YUN
Grove and Schock, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced January 29, 2026

---

Michael J. Allen, District Attorney, Doyle Baker, Senior Deputy District Attorney, Ben Hostetter, Senior Deputy District Attorney, Tanya A. Karimi, Deputy District Attorney, Colorado Springs, Colorado, for Plaintiff-Appellant

Suzan Trinh Almony, Alternate Defense Counsel, Broomfield, Colorado, for Defendant-Appellee

¶ 1     The People appeal the district court's decision to resentence Teral Stafin Lee to a shorter term than mandated by Colorado's habitual criminal statute (HCS).  *See* § 18-1.3-801(1.5), C.R.S. 2025.  The court resentenced Lee after finding his forty-eight-year sentence unconstitutionally disproportionate.  On appeal, the People contend that the court erroneously conducted its abbreviated and extended proportionality reviews.  We reverse the sentence because we agree the court erroneously conducted its abbreviated proportionality review.

## I.     Background

¶ 2     In April 2017, Lee shot and killed A.S., who was attempting to recover his girlfriend's belongings from Lee's car.  Lee was charged with, among other crimes, second degree murder and tampering with evidence, as well as two habitual criminal counts.

¶ 3     A jury found Lee guilty of second degree murder (heat of passion), a class 3 felony, and tampering with evidence, a class 6 felony.  At the habitual criminal proceeding, the prosecution proved

1

beyond a reasonable doubt that Lee satisfied the elements of the HCS, section 18-1.3-801(1.5)[1]:

(1)  Lee was convicted of a qualifying triggering offense — second degree murder (heat of passion), a class 3 felony;

(2)  Lee had been previously convicted of two qualifying predicate offenses — robbery, a class 4 felony, and possession of a controlled substance, a class 6 felony at the time; and

(3)  Lee's predicate convictions — robbery in 2008 and possession in 2009 — occurred within ten years of his commission of second degree murder (heat of passion) in 2017.

Additionally, Lee's predicate conviction for possession was still classified as a felony when he committed second degree murder (heat of passion) in 2017.  *See* § 18-1.3-801(3).

---

[1] Under section 18-1.3-801(1.5), C.R.S. 2025, any person convicted of a class 1, 2, 3, 4, or 5 felony who, within ten years of the commission of the offense, has been convicted of two other felonies separately brought and tried and arising out of distinct and separate criminal episodes, either in this state or elsewhere, is adjudged a habitual criminal and must be sentenced to the custody of the Department of Corrections for a term three times the maximum of the triggering offense's presumptive range.

¶ 4 As mandated by the HCS, the district court imposed a controlling prison sentence of forty-eight years for the second degree murder (heat of passion) conviction, with 544 days of credit for time served.[2] The court imposed this sentence after conducting an abbreviated proportionality review and finding the sentence constitutional. Lee appealed his sentence, among other things.

¶ 5 While Lee's appeal was pending, the supreme court announced *Wells-Yates v. People*, 2019 CO 90M (*Wells-Yates I*). A division of this court subsequently affirmed Lee's convictions but remanded the case to the district court with instructions to conduct an abbreviated proportionality review consistent with *Wells-Yates I. People v. Lee*, (Colo. App. No. 19CA0024, Oct. 28, 2021) (not published pursuant to C.A.R. 35(e)). Specifically, the division remanded for three reasons: (1) "the district court determined that Lee's predicate offense of possession of a schedule II controlled

---

[2] The base presumptive range for a class 3 felony is four to twelve years. *See* § 18-1.3-401(1)(a)(V)(A), C.R.S. 2025. But second degree murder (heat of passion) is a "crime of violence, as defined in section 18-1.3-406," so "the maximum sentence in the presumptive range is increased by four years." § 18-1.3-401(10)(a), (b)(XII). Thus, the maximum of the presumptive range for Lee's triggering offense of second degree murder (heat of passion) is sixteen years, and three times the maximum yields forty-eight years.

substance was grave and serious," a finding inconsistent with the holding in *Wells-Yates I*; (2) "there is no evidence in the record that the district court considered relevant statutory amendments as evidence of whether the offenses were grave or serious"; and (3) "it is unclear from the record the extent to which the district court analyzed the harshness of Lee's sentence." *Id.* at ¶¶ 48-50.

¶ 6 On remand, the district court conducted an abbreviated proportionality review, finding that Lee's forty-eight-year sentence raised an inference of gross disproportionality. As relevant here, the district court concluded:

> [T]he Court must find here that there is an inference of gross disproportionality in this sentence. The sentence, 48 years under the little habitual offender statute, yet [the HCS] depends on finding that the Defendant committed two felonies within ten years prior to the triggering offense. And the Defendant's two prior felonies were committed almost ten years prior to the murder 2 (heat of passion) offense. And convictions for possession of a controlled substance are no longer grave and serious. And one of the prior felonies is now classified merely as a drug misdemeanor and it is not grave and serious. If the Defendant were charged and sentenced . . . on his murder 2 (heat of passion) today, he would not be eligible to be classified as a habitual criminal and his maximum sentence would be 32 years. And if today the Defendant were not charged

4

> as a habitual criminal, he may be parole
> eligible more likely during his lifetime.
>
> And given this, the Court finds the existence of
> an inference the 48-year sentence is overly
> harsh and grossly disproportionate. And
> having made this finding, I do find it is
> necessary to conduct an extended
> proportionality review at this time.

The district court then conducted an extended proportionality review, concluding that the forty-eight-year sentence was grossly disproportionate and ultimately resentencing Lee to twenty-one years and nine months.

¶ 7    The People now appeal.

## II.    Jurisdiction

¶ 8    As an initial matter, Lee contends that we lack subject matter jurisdiction to review the People's appeal under section 16-12-102(1), C.R.S. 2025, because the district court's proportionality review involved factual questions rather than legal questions and the People failed to allege egregious or injurious error. We disagree.

¶ 9    Section 16-12-102(1) authorizes the prosecution to "appeal any decision of a court in a criminal case upon any question of law." "Whether a sentence is grossly disproportionate in violation of the

5

Eighth Amendment to the U.S. Constitution and article II, section 20 of the Colorado Constitution is a question of law, not a sentencing decision requiring deference to the trial court." *Wells-Yates I*, ¶ 35; *People v. McRae*, 2019 CO 91, ¶ 11. Consequently, a division of this court has reviewed a prosecutorial appeal challenging a district court's proportionality review. *People v. Gaskins*, 923 P.2d 292, 293-94 (Colo. App. 1996).

¶ 10    Lee correctly asserts that proportionality review entails analyzing facts and circumstances surrounding the triggering and predicate offenses, *Wells-Yates I*, ¶ 75, but our supreme court has held that this analysis is a legal question that appellate courts review de novo. *Id.* at ¶ 35; *McRae*, ¶ 11. We may, in our discretion, remand a case for the district court to conduct a proportionality review. *People v. Gaskins*, 825 P.2d 30, 31 (Colo. 1992), *abrogated on other grounds by, Wells-Yates I*, ¶¶ 16-17. But if the analysis — as in this case — does not require an inquiry into facts outside the appellate record, then we are "as well positioned as a trial court to conduct a proportionality review." *People v. Loris*, 2018 COA 101, ¶ 10 (citation omitted).

¶ 11    Here, the People challenge the district court's finding of gross disproportionality, contending that the court misapplied the law and reached erroneous legal conclusions.  Because those challenges involve questions of law, the People's appeal is proper under section 16-12-102(1).

¶ 12    We are not persuaded otherwise by Lee's argument that the People must allege egregious or injurious error as an additional requirement under section 16-12-102(1).  That statute contains no such requirement.  And we can find no case law imposing such a requirement as a jurisdictional prerequisite.  While some older cases express disfavor toward prosecutorial appeals lacking egregious or injurious error, none hold that such a showing is jurisdictionally required.  *See, e.g.*, *People v. Kirkland*, 483 P.2d 1349, 1350 (Colo. 1971) (expressing disfavor toward the district attorney's "sufficiency of the evidence" appeal as a "completely non-productive exercise" but acknowledging that the issue "as postured here involves a question of law, and as such, the district attorney is given authority to appeal"); *People v. Samora*, 532 P.2d 946, 948 (Colo. 1975) (discouraging prosecutorial appeals challenging sufficiency of the evidence while acknowledging that

"section 16-12-102 . . . gives the district attorney the right to appeal a judgment of a trial court in a criminal case upon any question of law"); *People v. Tharp*, 746 P.2d 1337, 1339 (Colo. 1987) (expressing disfavor toward prosecutorial appeals "with little precedential value" and, alternatively, no "egregious errors," but dismissing the appeal because it "merely raises factual and evidentiary questions well within the discretion of the district court"). Indeed, our supreme court has allowed prosecutorial appeals involving legal issues without requiring such a showing. *See, e.g.*, *Hunsaker v. People*, 2015 CO 46, ¶ 26 (stating only that appeals under section 16-12-102(1) are limited to purely legal questions).

¶ 13 Egregious or injurious error is therefore not a jurisdictional requirement for prosecutorial appeals under section 16-12-102(1). Even if it were, the district court's ruling prejudiced the People by substantially reducing Lee's sentence. Accordingly, we have subject matter jurisdiction to consider the People's appeal.

### III. Proportionality Review

¶ 14 The People argue the district court's finding of gross disproportionality was improper because the court erroneously conducted both the abbreviated and extended proportionality

reviews.  As to the abbreviated proportionality review, the People contend that the district court (1) "misapplied the law by failing to adequately examine the crimes in combination," in violation of *People v. Wells-Yates*, 2023 COA 120 (*Wells-Yates II*); (2) "improperly applied amendatory sentencing changes retroactively," in violation of *People v. McRae*, 2019 CO 91; and (3) wrongly evaluated Lee's "age with respect to parole."  As to the extended proportionality review, the People contend that the district court "refused to consider the seriousness of different offenses in comparing different crimes."

¶ 15    Because we agree with the first contention, we decline to address the remaining contentions.  We begin by outlining the proportionality framework, focusing on the abbreviated proportionality review.  We then apply the abbreviated proportionality review to Lee's sentence.

A.    Standard of Review and Governing Law

¶ 16    We review a district court's proportionality determination de novo because "[w]hether a sentence is grossly disproportionate . . . is a question of law."  *Wells-Yates I*, ¶ 35.

¶ 17     The Eighth Amendment to the United States Constitution and article II, section 20 of the Colorado Constitution prohibit the imposition of a sentence that is grossly disproportionate to the severity of the crime committed. *Wells-Yates I*, ¶¶ 7, 10. But this proscription "does not require strict proportionality between crime and sentence." *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring in part and concurring in the judgment) (citing *Solem v. Helm*, 463 U.S. 277, 288 (1983)); *see Close v. People*, 48 P.3d 528, 536 (Colo. 2002), *abrogated on other grounds by, Wells-Yates I*, ¶¶ 16-17. Rather, it forbids only extreme sentences that are grossly disproportionate to the crime. *Close*, 48 P.3d at 536.

¶ 18     Colorado courts conduct a two-step analysis when considering a proportionality challenge to a habitual criminal sentence. *Wells-Yates I*, ¶ 10. In step one — the abbreviated proportionality review — the court compares the gravity and seriousness of the triggering and predicate offenses with the harshness of the penalty. *Id.* at ¶¶ 7-14. In step two — the extended proportionality review — the court compares the challenged sentence to sentences for other crimes in the same jurisdiction and the same crime in other

jurisdictions. *Id.* at ¶¶ 15-17. The court should proceed to step two only in the "rare situation" where the "abbreviated proportionality review gives rise to an inference of gross disproportionality." *Id.* at ¶ 15.

¶ 19    The abbreviated proportionality review of a habitual criminal sentence entails "two subparts": (1) an analysis of "the gravity or seriousness of all the offenses in question — the triggering offense and the predicate offenses"; and (2) an analysis of "the harshness of the sentence imposed on the triggering offense." *Id.* at ¶ 23.

¶ 20    For subpart one, a court must first determine whether each offense is regarded as "per se" grave or serious. *Id.* at ¶ 13. If the offense is per se grave or serious, "the gravity or seriousness analysis ends," *McRae,* ¶ 17, meaning the district court "may skip the first subpart of [the abbreviated proportionality review] — the determination regarding the gravity or seriousness of the crimes — and 'proceed directly to the second subpart' of that step — the assessment related to the harshness of the penalty." *Wells-Yates I,* ¶ 13 (citation omitted).

¶ 21    If the offense is not per se grave or serious, the court must make "an individualized determination" that "turn[s] on the facts

and circumstances surrounding the specific crime committed." *Id.* at ¶ 69. To determine if an offense is grave or serious, courts assess "the harm caused or threatened to the victim or society" and "the culpability of the offender" by considering the following nonexhaustive factors:

> "[t]he absolute magnitude of the crime" . . . ; whether the crime is a lesser-included offense or the greater-inclusive offense; whether the crime involves a completed act or an attempt to commit an act; and whether the defendant was a principal or an accessory after the fact in the criminal episode.

*Id.* at ¶ 12 (quoting *Solem*, 463 U.S. at 292-93). Motive and the defendant's mental state — i.e., whether the defendant committed the act negligently, recklessly, knowingly, intentionally, or maliciously — are relevant to analyzing culpability. *Id.*

¶ 22 When evaluating the gravity or seriousness of a defendant's offenses, courts should consider relevant legislative amendments enacted after the date of the offenses, even if they do not apply retroactively, because these amendments, while not dispositive, are "the best evidence of our evolving standards of decency." *Wells-Yates I*, ¶ 49.

12

¶ 23    For subpart two, the court evaluates the harshness of the penalty imposed for the triggering offense, which includes consideration of parole eligibility. *Wells-Yates I*, ¶ 14. "[W]hether a sentence is parole eligible is relevant during an abbreviated proportionality review because parole can reduce the actual period of confinement and render the penalty less harsh." *Id.* When considering the harshness of the penalty, "a great deal of deference is due to legislative determinations regarding sentencing." *People v. Deroulet*, 48 P.3d 520, 523 (Colo. 2002), *abrogated on other grounds by Wells-Yates I*, ¶¶ 16-17. "[I]n almost every case, the abbreviated proportionality review will result in a finding that the sentence is constitutionally proportionate, thereby preserving the primacy of the General Assembly in crafting sentencing schemes." *Id.* at 526; *see Wells-Yates I*, ¶ 21.

### B.    Abbreviated Proportionality Review

¶ 24    Against this backdrop, we examine de novo the district court's abbreviated proportionality review of Lee's sentence. We disagree with the district court's legal conclusion that Lee's forty-eight-year sentence raises an inference of gross disproportionality. In doing so, we emphasize that this is *not* one of those rare cases in which

13

the legislature's habitual criminal sentencing determination raises such an inference. *See Wells-Yates I,* ¶ 21.

### 1. Gravity or Seriousness of Offenses

¶ 25    Lee's offenses include the triggering offense of second degree murder (heat of passion) and the predicate offenses of robbery and possession of a controlled substance. We address the gravity or seriousness of each in turn.

### a. Triggering Offense

¶ 26    The district court and the previous division concluded — and the parties agree — that Lee's 2017 conviction for second degree murder (heat of passion) is per se grave and serious. *Lee,* No. 19CA0024, slip op. at ¶ 52. This conclusion is supported by case law holding that "second degree murder" is per se grave and serious because it "always involves knowing conduct and grave harm — the death of a person." *People v. Crawley,* 2024 COA 49, ¶ 21. That Lee committed second degree murder in the heat of passion does not change this conclusion because "heat of passion is a sentence mitigating factor" that does not reduce Lee's mental state from knowing or negate the grave harm caused to his victim and society. *People v. Darbe,* 62 P.3d 1006, 1015 (Colo. App. 2002). Because we

agree with the division and the district court that Lee's 2017 conviction for second degree murder (heat of passion) is per se grave and serious, we need not analyze the facts and circumstances surrounding its commission.  *McRae*, ¶ 17.

### b.    Predicate Offenses

¶ 27    The district court and the previous division also concluded — and the parties agree — that Lee's 2008 conviction for robbery is per se grave and serious.  *Lee*, No. 19CA0024, slip op. at ¶ 41.  And Colorado law is clear that "[a] conviction for robbery is per se grave or serious because it will always involve knowing conduct and grave harm (or the threat of grave harm) to the victim or society (or both)."  *Wells-Yates I*, ¶ 64.  Because robbery is per se grave and serious, here too, we need not analyze the facts and circumstances surrounding its commission.

¶ 28    Lee's 2009 conviction for possession of a controlled substance requires "an individualized determination" because mere possession of narcotics is not per se grave or serious.  *Id.* at ¶ 69.  Applying the nonexhaustive factors, we agree with the district court that the crime is not grave or serious.  The facts surrounding this crime were that Lee unlawfully possessed four and a half Oxycodone pills.

15

The staleness of this eight-year-old offense lessens his "history of felony recidivism." *Id.* at ¶ 23. Lee acted knowingly as the principal to complete this offense, but both the resulting harm and absolute magnitude of his offense were minimal. As the district court noted, the offense "did not even involve any allegation of distribution."

¶ 29　　Additionally, Lee's possession offense was a class 6 felony when committed, but two subsequent legislative amendments suggest "evolving standards of decency." *Id.* at ¶ 46 (quoting *Graham v. Florida*, 560 U.S. 48, 58 (2010)). First, in 2013, the legislature amended the HCS so that small possession convictions, like Lee's, could no longer trigger habitual sentencing under section 18-1.3-801(2) of the HCS.[3] *See* Ch. 333, sec. 36, § 18-1.3-801(2)(b), 2013 Colo. Sess. Laws 1928. Second, in 2019, the legislature prospectively reclassified small possession offenses such that Lee's offense would be a level 1 drug misdemeanor if

---

[3] In 2013, the legislature replaced class-based drug felonies with a drug-level classification scheme. *See* Ch. 333, sec. 4, § 18-1.3-401.5, 2013 Colo. Sess. Laws 1903-04. Under that scheme, offenses that were formerly class 6 drug felonies were converted into level 4 drug felonies, the least serious category of drug felonies.

committed today. *See* Ch. 291, sec. 1, § 18-18-403.5(2)(c), 2019 Colo. Sess. Laws 2676.

¶ 30    To be clear, Lee still qualifies as a habitual criminal under section 18-1.3-801(1.5) of the HCS, but these amendments are "objective indicia of the evolving standards of decency" relevant "to determin[ing] the gravity or seriousness" of an offense. *Wells-Yates*, ¶ 47. Given these legislative changes and the facts surrounding Lee's possession conviction, we conclude this offense was not grave or serious.

## 2.    Harshness of Penalty

¶ 31    Having found the triggering offense and one predicate offense to be per se grave and serious and one predicate offense not to be grave or serious, we must now consider the harshness of the forty-eight-year sentence imposed for the triggering offense of second degree murder. *See Wells-Yates I*, ¶ 23. As part of this analysis, we must consider Lee's parole eligibility. *Id.*

¶ 32    Lee will be eligible for parole after serving seventy-five percent of his sentence, *see* § 17-22.5-403(2.5)(a), C.R.S. 2025, potentially reducing his actual period of confinement to thirty-six years. Even so, considering the gravity of the second degree murder, in

17

combination with his predicate offenses, we cannot conclude that this is one of the rare cases in which the legislature's habitual criminal sentencing determination raises an inference of gross disproportionality. *See Wells-Yates*, ¶ 21.

¶ 33    In reaching this conclusion, we find *Wells-Yates II* persuasive. In *Wells-Yates II*, the defendant received eight habitual sentences for eight triggering offenses committed in 2012 pursuant to section 18-1.3-801(2) of the HCS. *Wells-Yates II*, ¶¶ 44-52. Each sentence rested upon the same three predicate convictions: (1) possession with intent to distribute methamphetamine in 1996 (class 3 felony); (2) possession of less than four grams of methamphetamine in 1997 (class 4 felony); and (3) possession of more than four grams of methamphetamine in 1999 (class 4 felony). *Id.* at ¶ 37. In later years, these predicates were subject to a "sea change in our General Assembly's philosophy regarding the handling of drug offenses." *Id.* at ¶ 39 (citation omitted). Under current law, the 1996 offense would be a level 3 drug felony, the 1997 offense a level 1 drug misdemeanor, and the 1999 offense a level 4 drug felony. *Wells-Yates I*, ¶ 42; *Wells-Yates II*, ¶ 39; *see also Thomas v. People*, 2021 CO 84, ¶ 63 (holding that "level 4 drug felonies qualify as

18

neither triggering offenses nor predicate offenses for habitual

criminal purposes").

¶ 34     Still, the division upheld the habitual sentences for seven of

the triggering offenses, including a forty-eight-year sentence for

second degree burglary.  After concluding that second degree

burglary was grave and serious, albeit not per se, the division

reasoned:

> We acknowledge that this sentence too was
> quadrupled based on predicate offenses we
> have deemed not especially grave or serious,
> including two that would no longer qualify as
> predicate offenses under the [HCS]. . . .
> Considering the facts and circumstances
> surrounding the burglary offense, in
> combination with the predicate offenses, we
> cannot conclude that this is one of those rare
> situations in which the legislature's habitual
> criminal sentencing determination raises an
> inference of gross disproportionality.

*Wells-Yates II*, ¶ 66.

¶ 35     Although *Wells-Yates II* involved a different provision in the

HCS and a greater number of predicate offenses than in this case, it

remains instructive.  In *Wells-Yates II*, the defendant received a

forty-eight-year sentence for second degree burglary — an offense

that is not per se grave or serious — with three predicate offenses

that were not especially grave or serious, including two that would no longer qualify as predicate offenses under the HCS. By comparison, Lee received the same sentence for second degree murder (heat of passion) — an offense that *is* per se grave and serious — with one predicate offense that was per se grave and serious and another predicate offense that was neither grave nor serious and would no longer qualify as a predicate offense under the HCS. Given that a forty-eight-year sentence for second degree burglary passed constitutional muster, we conclude that a forty-eight-year sentence for the per se grave and serious offense of second degree murder (heat of passion) is constitutionally proportionate.

¶ 36    Furthermore, the weight of authority demonstrates that Lee's forty-eight-year sentence for second degree murder (heat of passion) does not raise an inference of gross disproportionality under the abbreviated proportionality review. *See Crawley*, ¶¶ 24-26 (a forty-eight-year sentence for second degree murder, a class 2 felony, with no prior felonies, did not raise an inference of gross disproportionality); *People v. Strock*, 252 P.3d 1148, 1158-59 (Colo. App. 2010) (a forty-eight-year sentence under the HCS for vehicular

homicide while driving under the influence did not raise an inference of gross disproportionality even though two of four predicate offenses were not grave or serious), *overruled on other grounds by*, *People v. Kennedy*, 2025 CO 63; *People v. Reese*, 155 P.3d 477, 480 (Colo. App. 2006) (a forty-eight-year sentence under the HCS for second degree burglary did not raise an inference of gross disproportionality even though three of five predicate offenses were not grave or serious); *People v. Martinez*, 83 P.3d 1174, 1180-81 (Colo. App. 2003) (a forty-eight-year sentence under the HCS for solicitation for child prostitution did not raise an inference of disproportionality when three of the four predicate offenses were grave or serious).

¶ 37    Where, as here, the "triggering crime in a habitual criminal case is grave and serious, generally only an abbreviated proportionality review is required." *Strock*, 252 P.3d at 1158. Lee's forty-eight-year sentence for the second degree murder (heat of passion) conviction, when combined with his two predicate offenses of robbery and possession, did not raise an inference of gross disproportionality given the gravity and seriousness of this triggering offense.

## IV. Disposition

¶ 38 The sentence is reversed. The case is remanded for the district court to reinstate the forty-eight-year sentence.

JUDGE GROVE and JUDGE SCHOCK concur.